304 F.2d 839
 RENTAL DEVELOPMENT CORPORATION OF AMERICA, an Arizona Corporation, Appellant,
v.
R. K. LAVERY, Donna J. Lavery, his Wife; J. E. Mainella and Lucille Mainella, his Wife, a Partnership, Doing Business as Big Camel Drug & Variety, Appellees.
 No. 17401.
 United States Court of Appeals Ninth Circuit.
 June 26, 1962.
 
 Elsing & Crable, William T. Elsing, and F. R. Crable, Phoenix, Ariz., for appellant.
 Powers & Rehnquist, and William H. Rehnquist, Phoenix, Ariz., for appellees.
 Before HAMLEY and DUNIWAY, Circuit Judges, and SOLOMON, District Judge.
 HAMLEY, Circuit Judge.
 
 
 1
 In this action for breach of lease defendant lessor, Rental Development Corporation of America, appeals from a judgment for plaintiff lessees. The lessees are two married couples doing business as Big Camel Drug & Variety, a partnership. Jurisdiction in the district court rested on diversity of citizenship. On the appeal we have jurisdiction under 28 U.S.C. § 1291.
 
 
 2
 Appellant is the owner of a shopping center in Phoenix, Arizona. On January 22, 1958, appellees leased one of the stores in this shopping center for use as a retail drug and variety store. Article V of the lease provided:
 
 
 3
 "Lessees shall use the demised premises for the purpose of conducting therein and therefrom a retail drug and variety store business * * * Lessor shall not, during the term of this lease, within a radius of two miles from the demised premises, permit any property which it owns or controls or in which it owns any financial interest, to be used for the purpose of conducting exclusively or otherwise a general retail drug or variety store business."
 
 
 4
 At the time this lease was entered into, appellant had another tenant, the Big Camel Market, which operated a foodmarket in another portion of the shopping center. Some drug and variety items were then being displayed and sold at the Big Camel Market, as appellees knew when they leased space for their drug and variety store.
 
 
 5
 Appellees opened their store on March 8, 1958. In the same month A. J. Bayless Markets, a Phoenix chain store company, purchased Big Camel Market, Inc. The latter was then renamed A. J. Bayless Market No. 27, and will be herein referred to as Bayless Market. Appellees thereafter observed what they believed to be a substantial enlargement in the display area of the Bayless Market devoted to drug and variety items, and a substantial increase in the variety of such items being displayed.
 
 
 6
 They complained to appellant lessor that this constituted a breach of the quoted provision of the lease. No relief being obtained in this direction the instant suit was brought against the lessors to enjoin them from permitting continuance of the asserted breach. Appellees also sought damages in the sum of $75,000 and "such other relief as to the Court may seem just and proper."
 
 
 7
 Appellant's answer consisted of a general denial and several defenses. One of the defenses was that, by mutual mistake of the parties, or by the mistake of the lessor and the fraud of lessees, the lease failed to set forth the actual agreement of the parties that the drug and variety retail sales activities of Big Camel Market, Inc., as then being carried on, were excepted from the business restriction provision contained in Article V of the lease. Appellant asked that Article V be reformed to incorporate therein such an exception.
 
 
 8
 The parties stipulated that the equitable issues would be tried by the court and the damage question would be determined by the jury. Nevertheless the jury was requested to render an advisory verdict on a special interrogatory as to whether appellant was entitled to have the lease reformed in the manner indicated.
 
 
 9
 The jury returned a damage verdict in favor of appellees in the sum of $17,373.50, and answered the special interrogatory in the affirmative — that the lease should be reformed.
 
 
 10
 Findings of fact and conclusions of law on the equitable issues were thereafter entered. The trial court found and concluded that the lease should be reformed in the manner requested by appellant. The court further found and concluded that, in lieu of enjoining appellant from permitting Bayless Market to maintain a drug and variety business greater than that maintained when the lease with appellees was executed, the lease between appellant and appellees for the drug and variety store should be cancelled and appellees should obtain return of prepaid rent in the amount of $4,550.
 
 
 11
 A judgment awarding damages in accordance with the jury verdict, and granting the equitable relief described above, was thereupon entered.
 
 
 12
 Seeking reversal of that judgment, appellant first argues that cancellation of the lease was not an issue in the case and it was therefore error to grant such relief. Appellant contends that the only equitable relief sought by appellees in their complaint was an injunction and the case was not tried on the theory of total breach of the lease warranting rescission.
 
 
 13
 The jury verdict established the fact that appellant had breached and was continuing to breach, Article V of the lease between it and appellees. Due to the difficulty of determining pecuniary damage resulting from a continuing breach of this provision during the term of the lease, equitable relief was indicated.
 
 
 14
 Even if Article V had not been reformed, however, it would have been difficult to afford such relief by way of an injunction. Bayless Market was not a party to the action. Hence the question of whether, under its lease with appellant, Bayless Market had the right to expand a drug and variety business, could not be litigated. An injunction, as prayed for, restraining appellant from "permitting or suffering" Bayless Market to carry on such a business would, in effect, determine this question without providing Bayless Market an opportunity to be heard.
 
 
 15
 The difficulty of affording injunctive relief was accentuated once it was determined that Article V of the lease should be reformed to except the drug and variety business of the predecessor of Bayless Market, as being carried on at the time the lease with appellees was executed. There was then added the problem of framing an injunctive order which would fairly and effectively differentiate between the permissible and the impermissible drug and variety operation by Bayless Market.
 
 
 16
 Under Article V, as reformed, it would be necessary to confine the future drug and variety operation at Bayless Market to the "retail sales activities" as "carried on" when the lease with appellees was executed. To accomplish this there would have to be taken into account not only the size of the display area and the variety of items on display, but also the sales and merchandise turnover. There would also be added the potential burden of continuous judicial supervision.
 
 
 17
 Under the circumstances, cancellation was the only practicable equitable relief available. While appellees did not, in their complaint, specifically request cancellation of the lease, they did include the usual prayer for "such other relief as to the Court may seem just and proper." Counsel for both sides were aware, prior to trial, that the court might be asked to order cancellation of the lease.[1]
 
 
 18
 Where the judgment is not entered by default, the trial court is ordinarily required to grant the relief to which the party in whose favor it is rendered is entitled, "even if the party has not demanded such relief in his pleadings." Rule 54(c), Federal Rules of Civil Procedure, 28 U.S.C.A. If, however, it is made to appear that the failure to ask for particular relief substantially prejudiced the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings.[2]
 
 
 19
 Appellant seeks to bring this case within the indicated qualification upon the application of Rule 54(c). It argues that, had it been forewarned that cancellation was being sought, appellant might have produced evidence that: (1) Bayless Market was selling such a small fraction of a percent of the type of goods handled by a drug and variety store that the breach would be found too insubstantial to warrant cancellation; (2) that Bayless Market had agreed to discontinue the sale of non-food items; and (3) Bayless' sales of non-food items increased the traffic to appellees' store.
 
 
 20
 As before indicated, appellant was forewarned that cancellation might be sought. But in any event all of these suggested lines of evidence were relevant to the damage and injunction issues which were expressly raised by the initial pleadings.
 
 
 21
 We conclude that appellant was not prejudiced by the absence from the complaint of a request for cancellation and that it was permissible under the issues framed by the pleadings and trial proceedings to order cancellation of the lease.
 
 
 22
 Appellant next contends that there is no substantial evidence to support the implicit jury finding that the increase in the amount and kinds of drug and variety items carried by Bayless Market after execution of the lease resulted in pecuniary loss to appellees.[3] It is argued that there is no evidence that: (1) such increase in the drug and variety stock at Bayless Market resulted in increased sales of such goods at that store; and (2) any increase in the drug and variety stock, or increase in sales of such stock, at Bayless Market, resulted in loss to appellees.
 
 
 23
 In our opinion there was evidence on the basis of which the jury could find that by reason of increased drug and variety inventory on display, and aggressive marketing techniques, Bayless Market gradually increased its retail sales on such items until the annual increase approximated $15,500 in 1960, as compared to 1958. There was also evidence that, at the same time, appellees' gross business in drug and variety items was dropping from $128,400 in 1958 (based on ten months' operations in that year), to $115,092 in 1959, and $79,375 in 1960. There was also testimony that, during this period, appellees could have sold double the amount of drug and variety items without increasing operating expenses.
 
 
 24
 Evidence was received to the effect that although appellees maintained no record of profit or losses on the so-called "competing" items, their drug and variety store sustained operating losses of $16,900 in 1958, $12,000 in 1959, and $40,000 in 1960. One of the appellees also testified that there were no factors other than the Bayless Market operation which would account for these losses. Counsel for appellant sought during the trial to establish other causes for appellees' losses, but the jury could have found that no other causes were shown.
 
 
 25
 Appellant calls attention to evidence tending to throw doubt upon the reliability of the evidence referred to above. It also notes the lack of other kinds of evidence which, if available, would have had more probative value on the question of causal relationship between the breach and the losses being sustained by appellees. These are factors bearing upon the weight of the evidence and were presumably considered by the jury. We conclude that there was substantive evidence of such causal relationship.
 
 
 26
 Appellant next argues that there was no evidence from which the jury could properly have measured the amount of damage in dollars.
 
 
 27
 The jury was instructed that any monetary award to appellees should compensate them fairly for such damages as they have suffered as a direct result of the breach of lease and which would yield appellees the net amount of the losses caused and gains prevented by the breach, limited to the period from January 22, 1958 to January 12, 1961. No exception was taken to this instruction. As before indicated, the jury verdict was in the amount of $17,373.50, and this award was reflected in the judgment.
 
 
 28
 Arizona, where this diversity suit arose, adheres to the general rule that a distinction is to be drawn between the measure of proof necessary to establish the fact of damage, and the measure of proof necessary to enable the jury to fix the amount. In Jacob v. Miner, 67 Ariz. 109, 191 P.2d 734, at 738, the court indicated in the following words the significance of this distinction:
 
 
 29
 "This distinction is fundamental for where, as here, it clearly appears that a party has suffered damage, a more liberal rule should be applied in allowing the court or jury to determine the amount of the damage than should be applied in weighing evidence on the question of whether or not the acts complained of will result in any damage at all to the party upon whom rests the burden of proof."
 
 
 30
 Applying this rule, it has been held in Arizona that an approximation of the damage, i. e., a rough yardstick, is sufficient where more specific evidence is not available, since to "* * * hold otherwise would in practical effect let the wrongdoer go free * * *." Tucson Federal Savings & Loan Ass'n v. Aetna Investment Corp., 74 Ariz. 163, 245 P.2d 423, 429-430.
 
 
 31
 The concurrence of increased sales of drug and variety items by Bayless Market, and decreased sales by appellees, accompanied by increasing annual losses, all reaching the substantial figures referred to above, satisfies us that the jury award, tested by the liberal rule to be applied in such cases, has ample support in the record.
 
 
 32
 Appellant's final contention is that the business restriction provision contained in Article V of the lease, as reformed by the judgment, prohibits appellant only from permitting a new drug and variety business, exclusive or otherwise, to be commenced on its premises after the lease with appellees became effective. Thus, it is argued, "a mere increase in business activity by Big Camel Market [and its successor Bayless] did not constitute a breach of the written lease."
 
 
 33
 The business restriction provision contained in Article V did not originally include any exception in the case of other drug and variety businesses already being conducted on premises owned or controlled by appellant. In other cases where similar lease provisions have contained no exceptions, the courts have reached divergent results with regard to whether a then-existing business of the kind described in the provision was intended to be excepted from the restriction. Lack of uniformity in these cases is explainable, for the most part, by the varying extrinsic evidence of intention which was received and considered.[4]
 
 
 34
 But Article V has been reformed, at appellant's request, to except the drug and variety retail sales operations of Big Camel Market, Inc., "as being carried on" at the date of the execution of the lease. This added language is virtually in the form proposed in appellant's answer to the complaint.[5]
 
 
 35
 The construction of this added language for which appellant now contends is not the construction which appellant's trial counsel placed on the exception which he proposed be added to Article V of the lease. At the very outset of the trial he made a statement to the court which indicated that he believed the words "as being carried on" referred to the magnitude of the drug and variety business then engaged in by the predecessor of Bayless Market, so that any increase in such business would not be covered by the added exception.[6]
 
 
 36
 Had it been the intention to except from the business restriction all drug and variety retail sales activities of the grocery market, regardless of magnitude, it would not have been necessary to use the words "as being carried on at the date of the execution of this lease. * *" Those words signify a limitation on the scope of the exception, as counsel who proposed the words "as being carried on," understood. We conclude that the trial court did not err in giving such effect to the added words in rendering the judgment under review.
 
 
 37
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 This is indicated by the following statement contained in a memorandum brief filed in the trial court by appellees after entry of the jury verdict: "The Court will recall that by stipulation prior to the submission of the damage issue to the jury, counsel agreed that the equitable issues such as cancellation or rescission and injunction might be submitted to the Court without a jury * * *."
 
 
 [2]
 For example, in Connolly v. United States, 9 Cir., 149 F.2d 666, it appeared that defendants failed to demand a jury trial in the belief that only ordinary damages and an injunction were sought for trespassing on an Indian reservation, and evidence as to consent which would have been relevant in an action to recover a monetary penalty authorized by statute was excluded. Under these circumstances, the complaint containing no prayer for recovery of such a penalty, this court reversed a judgment imposing a penalty
 
 
 [3]
 Appellant does not ask us to hold that the evidence does not support the implicit finding that there had been an increase in the drug and variety stock at Bayless Market. In its opening brief appellant states: "The evidence on the question of increase (in stock) was in conflict and it is needless to try the Court's patience by asking it to reassess this evidence."
 
 
 [4]
 Compare Mook v. Weaver Bros., 61 App. D.C. 214, 59 F.2d 1028, supporting appellant's view, with Parker v. Levin, 285 Mass. 128, 188 N.E. 502, 90 A.L.R. 1446; Pappadatos v. Market Street Building Corp., 130 Cal.App. 62, 19 P.2d 517; Kulawitz v. Pacific Woodenware & Paper Co., 25 Cal.2d 664, 155 P.2d 24, 29; and Krikorian v. Dailey, 171 Va. 16, 197 S.E. 442. See also, annotation in 90 A.L.R. 1449
 
 
 [5]
 Appellant requested in his answer that the following provisions be added to Article V:
 "The drug and variety retail sales activities of Big Camel Market, Inc., as now being carried on, are excepted from the business restriction provisions hereof."
 
 
 [6]
 In his opening statement to the jury made at the outset of the trial, counsel for appellees stated that, at the time the lease was entered into "there was just the minimal sort of drug items [in the predecessor of Bayless Market] that perhaps many grocery stores here in town carry, toothpaste, shaving soap, and that sort of thing, and just very sporadic, and almost negligible items * * *" Counsel for appellees further stated, however, that shortly after Big Camel Market was acquired by A. J. Bayless, there was a "drastic" change in the kind of merchandise being offered by the grocery market, there being a steady increase in the stock of variety items
 On the basis of this opening statement counsel for appellant immediately moved for a directed verdict on the reformation issue. He argued that counsel for appellees had in effect indicated that "there was no objection to the operations then carried on, which I admit, with the plaintiff, was that it was minimal articles in each category, drug or variety, but all we are asking for is to show that there was no objection at that time, that leaves for the future the ground that it was increased."
 The motion was denied because the trial court did not regard the statement of appellee's counsel as a concession that the "minimal" drug and variety operation being carried on when the lease was executed should be excepted from the business restriction provision of Article V.