Ray MARSHALL, Secretary of Labor, United States Department of Labor

*v.*

ALLEN–RUSSELL FORD, INC. et al.

Civ. No. 3–79–292.

United States District Court,
E. D. Tennessee, N. D.

Feb. 13, 1980.

Marvin Tincher, Ralph D. York, George Drumming, Jr., U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Charles Kelso, Ruth W. Woodling, Fisher & Phillips, Atlanta, Ga., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action by the Secretary of Labor under the minimum wage and recordkeeping provisions of Section 17 of the Fair Labor Standards Act ("the Act"), 29 U.S.C. § 201 *et seq.* The case was referred to the United States Magistrate as Special Master for his report and recommendation. After a nine-and-one-half day trial without a jury, the Magistrate submitted his report and recommendations. Both sides in this lawsuit have filed objections to the report.

It is undisputed, at this stage, that defendants, two car dealerships and their owner, failed to maintain satisfactory records under the Act and failed to pay many of their sales personnel the minimum wage. It is also undisputed that defendants' violations were such that would justify applying a three-year statute of limitations in this case. *See* 29 U.S.C. § 213(b)(10)(A). The objections filed by both sides go to certain particulars in the remedy recommended by the Magistrate.

One of the problems in the case is how to deal with participants in a sales training course conducted by Allen–Russell Ford. The Magistrate found that these participants were "employees" as defined in the Act after two weeks of the course, and therefore were owed the minimum wage for hours worked after those first two weeks. Defendants say these class members were not "employees" until after four weeks of the course, while plaintiff claims the class members were "employees" from the very beginning. In the opinion of the Court, the Magistrate's finding of fact in this regard is supported by substantial evidence and must be adopted.

■ Another problem was the practice of allowing salesmen to use dealer-owned "demonstrator" cars for personal use, and sometimes deducting a fee for such use from commission payments. Defendants claim the use of these demonstrators and the deductions for such use constitute wages. The Magistrate found, as a matter of fact, that the primary benefit from this use of demonstrators went to the defendants. This finding is supported by substantial evidence and is adopted. Therefore, the Magistrate's conclusion that the use of and deductions for demonstrators were not wages, is correct and adopted.

Defendants bring up two problems not directly addressed by the Magistrate concerning the pleadings and the evidence. They contend the pleadings seek no backpay from Allen–Russell Ford prior to January, 1977, and that backpay should not be recovered by employees about whom no evidence was adduced at trial. In the opinion of the Court, there was substantial evidence that ·defendants kept insufficient records and that would justify a finding that all employees averaged a 50-hour workweek. Further, no mention of a retroactive cut-off date for relief is mentioned in the pre-trial order, which supplants all prior pleadings. Accordingly, these objections are overruled.

Finally, plaintiff adamantly objects to the Magistrate's method of computing backpay for periods when certain pay plans were in effect. Defendants have a diametrically opposite objection to computation of backpay during another period under a different pay plan.

Prior to February, 1979, defendants, at times, paid sales personnel according to a "60%–40% pay plan" or a "80%–20% pay plan." Under these plans, sales personnel were paid a large percentage of their commissions each week (except the first week). These payments were not considered regular payroll checks and no deductions were made from them. Then, at the end of the month, the remaining small percentage would be paid of all commissions earned during the entire month, plus or minus any monthly bonuses or deductions. The Magis-

trate found that sales personnel paid under these plans often held up the paper work finalizing a sale until the end of the month, to get a larger month-end check. As a result of this practice, or as a result of poor sales in the first part of the month, many sales personnel often received little or no compensation before the end-of-the-month check came in. This end-of-the-month check would, at times, be more than sufficient to pay the minimum wage for the entire month, if it was allocated over the entire month. The Magistrate found that under these 60%–40% or 80%–20% pay plans the basic pay period was the calendar month, with one regular payday for each month. The effect of this finding is to allocate the oftentimes larger end-of-the-month check over the entire month for minimum wage purposes. Thus, a salesman earning no commission and no compensation the first three weeks of a month, but earning substantial commissions and compensation at the end of the month may not be entitled to minimum wage payments for the first three weeks when no money was received.

The Secretary of Labor strongly objects to this finding and insists that these end-of-the-month checks not be allocated over the entire month. The defendants contend the Magistrate did not go far enough and should have ordered end-of-the-month checks received under defendants' current weekly pay plan allocated over the entire month.

■ The law on this issue is simply stated in the Department of Labor's Field Office Handbook:

"While there is no requirement that compensation be paid weekly, the minimum wage provisions of the Act apply on a workweek basis. Thus, in order to meet the requirements of Section 6, an employee compensated wholly or in part on a commission basis must be paid an amount of not less than the applicable statutory minimum wage for all hours worked in each workweek without regard to his sales productivity, and this amount must be paid to him free and clear (i. e.,

**618**

finally and unconditionally) on the payday for that week. . . ." Dept. of Labor Field Office Handbook, Section 30b05.

The Magistrate found as a matter of fact that while a 60%–40% or 80%–20% plan was in effect, the payday for all weeks in a calendar month came once a month, at the end of the month. In light of the irregularity of the other payments, and the practice of holding back finalization of sales to increase the end-of-the-month check, the Magistrate's finding in this regard is supported by substantial evidence.

In the opinion of the Court, the Magistrate's findings and conclusions in this regard fully comply with the law and Labor Department practices, once it is understood that these plans involved *monthly* paydays. The plaintiff's objections to averaging good sales weeks with bad sales weeks is valid only to the extent that separate pay periods cannot, under the law, be averaged together. However, as stated above, there is nothing in the law that says a pay period has to be one week only or that employees must be paid weekly. A pay period can be one week, two weeks, or a month (or, as pointed out by plaintiff, even longer). Averaging of good and bad weeks *within the same pay period* is unavoidable. Under the theory of plaintiff, paying commission salesmen on a bi-weekly basis would be illegal, because a bad first week would be averaged into a good second week. This, in the opinion of the Court, is not what the law, or even what the Labor Department's official policy, says. The Magistrate's legal conclusions are sound, and lessen somewhat the anomaly of paying back minimum wages to salesmen who have earned five figure incomes for the years in question.

Similarly, the defendants' position, that end-of-the-month commission payments made over and above weekly minimum wage payments under current pay plans should be allocated over the entire month in fixing back wages, is invalid. The Magistrate has found that under the current plans, the pay period consists of one week. This finding is supported by substantial evi-

dence. Under the law, each pay period must stand alone in determining whether the minimum wage has been paid.

For the foregoing reasons, it is ORDERED that the report and recommendations of the Special Master be, and the same hereby are, approved and adopted. It is further ORDERED that the plaintiff submit a final judgment in line with the Special Master's Report within ten (10) days from the date this Order is entered.

Order accordingly.