**Decided July 3, 1984**

IN THE DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | | |
|---|---|---|
| SANTIAGO E. ELAYDA, | ) | APPEAL NO. 81-9010 |
| | ) | |
| Plaintiff/Appellant, | ) | CIVIL ACTION NO. 80-205 |
| | ) | |
| vs. | ) | |
| | ) | |
| J & I CONSTRUCTION CO., | ) | O P I N I O N |
| JUAN Q. GUERRERO, et al., | ) | |
| | ) | |
| Defendants/Appellees. | ) | |
| | ) | |

Appeal from the Commonwealth Trial Court
for the Northern Mariana Islands
Argued and Submitted January 20, 1984

BEFORE:   Judges LAURETA, KEEP and SOLL*

KEEP, District Judge:

Plaintiff-Appellant Elayda brought an action against his
employer, Defendant-Appellee Juan Guerrero, d/b/a J. & I. Construction
Co., for violations of the Minimum Wage and Hours Act of 1978, P.L.
1-20, (the "Wage Act"). Although Elayda prevailed on his claims for
unpaid back wages and unpaid overtime, he assigns as error the trial
court's decision not to find liability under § 3 of the Wage Act
(minimum wages); the denial of liquidated damages for violations of § 4

---

* Honorable Herbert D. Soll, Commonwealth Trial Court Associate
  Judge sitting by designation pursuant to 48 U.S.C. § 1694b.

1027

of the Wage Act (overtime wages); and the denial of attorney's fees under § 13(c) of the Wage Act. We affirm in part, and reverse in part with a remand to the trial court for further proceedings consistent with this opinion.

## I.

In 1979, appellant Elayda entered into an oral contract with Guerrero, who owns and operates the J. & I. Construction Company. The terms of this agreement called for Elayda to be reimbursed for his travel expenses from the Philippines to Saipan and for Elayda to work as a mason at the rate of $2.00 per hour. After Elayda arrived in Saipan, the parties amended the agreement orally. Elayda was to perform work other than masonry and was given additional supervisory responsibilities. His wage was increased to $3.00 per hour. From about March 18, 1979 to mid-June 1979 Elayda did construction work on an addition to defendant's house. The testimony at trial indicated, and the judge found, that Elayda basically set his own hours. Although defendant obtained some other workers to assist him, Elayda was primarily in charge and did most of the work. On March 10, 1980, Elayda was terminated by J. & I. Construction. There was a dispute about what wages he was owed, and on April 7, 1980, he filed a complaint with the Commonwealth of the Northern Mariana Islands (CNMI) Division of Labor against Guerrero d/b/a J. & I. Construction. Elayda alleged that Guerrero: (1) failed to pay him wages for work performed; (2) failed to pay him overtime as required by statute; (3) failed to reimburse him for travel expenses; (4) failed to return his tools; and (5) failed to provide a stove and refrigerator for his living quarters as required by the employment contract. The Division of Labor held a labor

////

investigation and on September 10, 1980, Acting Chief of Labor George Camacho issued an opinion. This investigation determined that Elayda had been properly terminated, but that Elayda was owed $252.00 in unpaid overtime wages and $40.00 for housing expenses. It was found that Guerrero owed nothing for back wages, travel costs, or return of the tools allegedly taken. In addition, Elayda's nonresident worker's permit was revoked and Elayda was ordered to leave the Commonwealth within 10 days.

Elayda then filed a "Notice of Appeal" from the order of the CNMI Division of Labor in the Commonwealth Trial Court. Three days later, on September 22, 1980, Elyada amended his complaint. The amended complaint was styled as a "Notice of Appeal and Complaint." The named defendants were Guerrero, J. & I. Construction, and the CNMI Division of Labor. The amended complaint alleged 49 Trust Territory Code ("T.T.C.") § 1 et. seq., the statute providing judicial review of Division of Labor decisions and P.L. 1-20, The Wage Act, as independent bases of jurisdiction for the suit.

The Attorney General, on behalf of CNMI Division of Labor, moved to dismiss the suit based on failure to exhaust administrative remedies. According to 49 T.T.C. § 11, employees dissatisfied with the decision of a labor investigation have the right to a formal hearing before the Chief of the Division of Labor to appeal those findings. Under 49 T.T.C. § 12, appeals from an order of the Chief of the Labor Division issued pursuant to § 11 can be filed in the Commonwealth Trial Court. If the trial court finds that the findings of the Chief are supported by substantial evidence, then the Chief's findings are deemed final. 49 T.T.C. § 12(3). The attorney general argued that by filing his appeal in the trial court after only a labor investigation and not

proceeding to a review by the Chief of Labor, Elyada was bypassing one of his administrative remedies. In this case, the person who had conducted the labor investigation, George Camacho, was also the Chief of Labor. Under the applicable statutes he was authorized to review his own decision. The trial court found that in that situation, it was unnecessary to seek review under § 12, and refused to dismiss the case. Instead, it vacated all the findings of the labor investigation, and gave Elayda a trial de novo. After a two day bench trial, the court found in favor of Elayda, specifically finding that Elayda had worked 698 hours without pay, 138 hours of which were overtime hours.

The trial court awarded Elayda damages of $1,833.00 consisting of back pay, overtime wages, travel expenses, housing expenses, and tools. The court found that there was no violation of § 3 of the Wage Act, failure to pay the minimum wage. The court did find a violation of § 4, failure to pay overtime wages, but found that the violation was not willful and therefore refused to award liquidated damages. The court also refused to award attorney's fees under § 13(c) of the Wage Act, which mandates an award of attorney's fees for successful plaintiffs who sue under the Wage Act. The court reasoned that the suit was actually an appeal of the administrative action, and since 49 T.T.C. § 1 et. seq. does not have an attorney's fees provision, it would be improper to award them to Elayda.

II.

The following issues are raised by this appeal.

A. Did the trial court err in finding Guerrero had not violated § 3 of the Wage Act despite the fact that Elayda had not received any wages for 698 hours?

B. Was it error to deny Elayda liquidated damages pursuant to § 13(b) of the Wage Act because the issue of liquidated damages was not raised

1030

until opening argument?

C. Was the trial court's finding that there had been no willful violation of the Wage Act erroneous?

D. Should Elayda have been awarded attorney's fees under § 13(e) of the Wage Act?

### III.

#### A. Minimum wages.

Elayda contends that the trial court did not find that Guerrero violated the minimum wage provision of the Wage Act, § 3, because Guerrero had agreed to pay him an amount in excess of the minimum wage. Elayda argues that under this analysis, an employer could always shield himself from minimum wage liability simply by promising to pay more than the minimum wage, without having to keep the promise. We have only a partial record before us and we cannot determine from it what the trial court's reasoning was in finding that the minimum wage provision was not violated. However, the language of §3 directs that every employer _shall_ _pay_ each employee the minimum wage, unless the employee falls within certain narrow exceptions set forth in § 10, which are not applicable herein. While the interpretation attributed to the trial court by Elayda is a plausible construction of the language of the Act, we are persuaded, based on a thorough consideration of the policies underlying minimum wage laws, that the construction given the Wage Act by Elayda best effectuates the purposes of the Act. Accordingly, we hold today that a mere promise to comply with the law without actual performance by the promisor will not constitute sufficient compliance to relieve the employer of liability. The focus of any inquiry under the Act must be on what the employee received, not on what the employer promised.

The court found that Guerrero paid Elayda nothing for 650 consecutive hours of work between March and June 1979, and 48 additional hours, for a total of 698 unpaid hours. Elayda takes the position that Guerrero's failure to pay him anything for these hours is a per se minimum wage violation. We agree. Resolution of this issue is based on a threshold question: what constitutes a minimum wage violation? The answer to this question in the context of the federal minimum wage laws has varied. The Fair Labor Standards Act, 29 U.S.C. § 201 et. seq., contains the federal minimum wage and overtime hours provisions. Specifically, § 206 establishes a minimum hourly wage, and § 207 mandates that in any week an employee who works in excess of 40 hours shall be paid one and one-half times the regular rate for all overtime hours worked. Sections 3 and 4 of the Wage Act parallel § 206 and § 207 of the federal law.

Confusion surrounding minimum wage claims results from the statutes' failure to specify the relevant pay period over which the prescribed minimum wage must be paid. The problem is stated clearly in Marshall v. Sam Dell's Dodge, 451 F.Supp. 294, 301 (N.D.N.Y. 1978):

> Defendants' salespersons worked on the average 55 hours per week. For weeks during which they made no sales and, therefore, earned no commissions or bonuses, they would receive only the base pay -- e. g., $56 per week prior to 1976 -- which was less than the minimum wage. Plaintiff contends that, by not paying the guaranteed minimum wage for each hour worked in each week, defendants violated section 6 of the Act. Defendants concede that they paid their employees only $56 in some weeks and that simple multiplication of the required minimum wage times the hours worked in those weeks exceeds the amounts paid. They contend, however, that some period other than the week should be used in assessing compliance with the minimum wage requirements of the Act.

The court held that:

> In this case the relevant period for analyzing compliance with section 6 of the Act is the workweek. Regardless of the total pay received by an employee, the Act requires that each employee receive, each week, an amount equal to the minimum wage times the number of hours worked. Defendants have, therefore, violated

1032

section 6 of the Act by paying less than minimum wage to certain employees in certain weeks.

Id. at 303. On virtually identical facts, the district court in Marshall v. Allen Russell Ford, 488 F.Supp. 615 (E.D.Tenn. 1980) reached a different conclusion:

> The plaintiff's objections to averaging good sales weeks with bad sales weeks is valid only to the extent that separate pay periods cannot, under the law be averaged together. However, as stated above, there is nothing in the law that says a pay period has to be one week only or that employees must be paid weekly. A pay period can be one week, two weeks, or a month (or, as pointed out by plaintiff, even longer). Averaging of good and bad weeks within the same pay period is unavoidable. Under the theory of plaintiff, paying commission salesmen on a bi-weekly basis would be illegal, because a bad first week would be averaged into a good second week. This, in the opinion of the Court, is not what the law, or even what the Labor Department's official policy, says.

Id. at 618.

A persuasive opinion by Judge Porter in Luther v. Z. Wilson, 528 F.Supp. 1166 (S.D. Ohio 1981) traces and accounts for these disparate holdings and sheds much light on the issue. Initially, the judge notes:

> In determining the plaintiff's minimum wage and overtime compensation claims, the first issue that must be resolved is what is the applicable period for which payments must equal the statutory requirements. Resolution of this issue is made exceedingly difficult by the sporadic nature of the . . . payments plaintiff received and by conflicting statements, in both case law and administrative interpretations regarding the "work week standard" of the Act and the payroll period.

Id. at 1173. The opinion then details various seemingly inconsistent administrative regulations promulgated by the U.S. Dept. of Labor. To illustrate that the administrative confusion has carried over to the courts, the opinion quotes the contradictory holdings of Allen-Russell Ford and Sam Dell's Dodge, supra. The court resolves the issue by focusing on the underlying principles of the wage laws:

////

Analysis of numerous cases and administrative interpretations in regard to this issue reveals three separate principles at work. Failure to distinguish among these principles results occasionally in dicta that payment for hours worked must be made in every work week. The first of these principles is that workweeks may not be averaged to avoid the obligation to pay overtime compensation. See, e.g., Roland Electrical Co. v. Black, 163 F.2d 417 (4th Cir.1947), cert. denied, 333 U.S. 854, 68 S.Ct. 72, 92 L.Ed. 1135 (1948); Travis v. Ray, 41 F.Supp. 6 (W.D.Ky.1941). Second, pay periods may not be averaged, as, for example, where an employee works 20 hours one week and 30 hours the next at a salary sufficient to cover 25 hours, in order to avoid paying minimum wage compensation in a longer than average week. See e.g., Wage and Hour Opinion Letter No. 24 (October 3, 1961); cf., United States v. Klinghoffer Brothers Realty Corp., 285 F.2d 487, 493 (2d Cir. 1960) (extra hours may be required of a salaried employee so long as the salary is adequate to cover the minimum due for the total hours worked). Third, an employer and an employee are free to contract for any regular pay period. See Wage and Hour Opinion Letter No. 63 (November 30, 1961). Ordinarily, the relevant pay period is determined from the actual pattern of payments adopted by the parties. See, Marshall v. Allen-Russell Ford, Inc., 488 F.Supp. 615 (E.D.Tenn.1980); Marshall v. Sam Dell's Dodge Corp., 451 F.Supp. 294 (N.D.N.Y.1978); Travis v. Ray, 41 F.Supp. 6 (W.D.Ky.1941); Wage and Hour Opinion Letters No. 1296 (WH—244) (November 27, 1973), No. 116 (August 2, 1962). Weekly, semi-monthly, and monthly payroll periods have been approved, and indeed one Court has indicated that even longer periods may be permitted. Marshall v. Allen-Russell Ford; Inc., 488 F.Supp. 615 (E.D.Tenn.1980).

528 F.Supp. at 1173-74.

We, too, decline to hold that the work week must be the relevant pay period for calculating the minimum wage. We are, however, unable to ascertain the pay period the parties had agreed to in the instant case. The trial court specifically found that "payment to the plaintiff was randomly performed." We must therefore determine whether the failure to pay Elayda any wages from March until June, a time span of 14 weeks, is permissible under § 3 of the Wage Act. We are of the opinion that it is not. In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902, 80 L.Ed. 1296 (1945), the Supreme Court emphasized the importance of an employee's regular receipt of the minimum wage:

> [F]ailure to pay the statutory minimum on time may be . . . detrimental to maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" . . . . Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date.

This rationale is applicable to those who earn more than the statutory minimum rate. As the court in Sam Dell's Dodge said:

> The defendants may see this rationale as applicable only to workers with annual incomes in the minimum wage range. However, in the period with which we are dealing even the better paid salesman with a family would be hard pressed if he were obliged to suffer a few weeks at less than minimum wages. Plaintiff has shown that at least four of defendants' salesmen failed to receive the minimum wage during periods of nine to twelve consecutive weeks. (Plaintiff's Exhibit 4). This is the precise danger which the Fair Labor Standards Act sought to meet.

451 F.Supp. at 302.

In the instant case Elayda received no wages for 14 weeks. This is exactly the situation which the courts in Brooklyn Savings and Sam Dell's Dodge cautioned against. We too are of the opinion that a 14 week failure to pay wages is beyond the outer threshold of what is permissible under the Wage Act. We therefore conclude that Guerreor's failure to pay Elayda any wages for 698 hours constituted a violation of § 3 of the Wage Act.

B. Denial of liquidated damages for failure to correctly plead this issue.

Elayda first explicitly mentioned liquidated damages during opening statement. Guerrero objected on the ground that since neither the complaint nor the pre-trial order mentioned liquidated damages or willfulness, he was not put on notice that the issue was to be litigated and was unable to adduce evidence in his favor at trial. The court allowed testimony on liquidated damages. Subsequently, the court found

1035

there was no willful violation of the Wage Act, and that the issue of liquidated damages had not been properly raised.

Elayda submits that the latter ruling was erroneous. He argues liquidated damages could have been based on the catch-all clause in the prayer, which requested such other relief as the court deemed just and equitable. Further, he argues such damages should be granted based on Commonwealth Trial Court Rule of Civil Procedure, ("CTCRCP") 54(c) which is identical to FRCP 54(c). Both rules provide that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party had not demanded such relief in his pleadings." Guerrero does not respond to this argument. In explaining the operation of Rule 54(c), 10 Wright & Miller, Federal Practice and Procedure § 2664, at 146, makes it clear that:

> If defendant has appeared and begun defending the action, adherence to the particular legal theories of counsel that may have been suggested by the pleadings is subordinated to the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not. The only exception to this rule is if plaintiff's failure to demand the appropriate relief has prejudiced his adversary.

In <u>Rental Development Corp. of America v. Lavery</u>, 304 F.2d 839, 842 (9th Cir. 1962) the court said:

> Where the judgment is not entered by default, the trial court is ordinarily required to grant the relief to which the party in whose favor it is rendered is entitled, "even if the party has not demanded such relief in his pleadings," Rule 54(c), FRCP . . . . If, however, it is made to appear that the failure to ask for particular relief <u>substantially prejudiced</u> the opposing party, Rule 54(c) does not sanction the granting of relief not prayed for in the pleadings. [emphasis added]

Guerrero's only claim of prejudice is his statement that failure to plead liquidated damages resulted in an inability to produce evidence that his violation of the Wage Act was not willful. In the context of this case, his argument is not persuasive. Section 13 (b) of

the Wage Act refers to liquidated damages for willful violations in the same sentence that sets forth liability for unpaid minimum wages or overtime. Since Guerrero was aware of the provision under which Elayda sued, it is difficult to believe that he was unaware that he faced potential liability for liquidated damages if his violation of the Wage Act was found to be willful. A similar situation arose in McCulloch Motors Corp. v. Oregon Saw Chain Corp., 245 F.Supp. 851, 855-56 (S.D.Cal. 1965). McCulloch involved a case of patent infringement. Under the U.S. Code, willful infringement of a patent will result in a greater damage award. Willful infringement had not been specifically pled nor included in the pretrial order. The court noted:

> The claim of McCulloch that the issue of willful infringement was not touched upon in the pretrial order did not and does not preclude the Court from considering that issue where the issue of wilfulness is so inextricably involved with the question of infringement that they cannot be separated as was the situation in the instant case.

Although it might be too strong a statement to say that the issues of willfulness and failure to pay the wages prescribed by the Wage Act are "inextricably" intertwined, the issues are very closely related. As will be discussed more fully below, all that should be required to find a willful violation of the Wage Act is that the employer had knowledge that his actions were covered by a statutory scheme. To make this showing at trial Plaintiff need only ask Guerrero whether he was aware of the Wage Act. Beyond a simple denial of any knowledge of the statute, it is difficult to see what other evidence Guerrero could have adduced to negate the showing of a willful violation. Accordingly, Elayda's failure to plead this issue did not prejudice Guerrero in a manner which would require Rule 54(c) not to be applied.

C.  Willful violation.

The trial court found that Guerrero's violation of the Wage Act was not willful.  Specifically, the court found no willful violation because there was no concentrated effort to work Elayda on a steady 10-hour per day basis and because Guerrero had no "willful intent" to fail to pay Elayda.

Section 13 (b) of the Wage Act provides for liquidated damages for a "willful violation" of the Act, but there is no definition of willful provided.  The trial judge did not state the definition of willful he used in making his findings on the issue.  Elayda has suggested that it would be appropriate to use the definitions of willfulness that have been stated in cases involving the Age Discrimination Employment Act ("ADEA") 29 U.S.C. § 621, et. seq.  The ADEA has a damages section which is identical to that of § 13(b) of the Wage Act.  Guerrero objects to the use of the ADEA as a model for defining willful as the cases arising under it involve allegations of discrimination; he suggests public policy concerns have effected the definitions of willful for purposes of the ADEA and as such those definitions are inappropriate for the Wage Act.  Guerrero does not suggest a more apt statute to look to for a definition of willfulness. We believe that Elayda's suggestion to look to federal law for an analogous statutory provision is correct; however, due to the above-mentioned public policy concerns and the fact the courts have been inconsistent in their definitions of willful under the ADEA, we look to the Fair Labor Standards Act.  The liability section of the Act, which corresponds to § 13 of the Wage Act, is § 216(b).  Section 216(b) makes an employer who violates the provisions of § 206 or § 207 liable to the

affected employees for their unpaid minimum or overtime wages and an equal amount as liquidated damages. The somewhat harsh consequences of this mandatory assessment of liquidated damages have been mitigated by the Portal-to-Portal Pay Act, 29 U.S.C. § 251, et. seq. Section 260 provides that in any action to recover minimum wages or unpaid overtime wages under § 206 or § 207, the trial court has discretion not to award liquidated damages if the employer can satisfactorily show that its act or omission was based on a good-faith belief that the act was not being violated. Thus, due to the differences between the liability sections of the Federal and the CNMI minimum wage and hours laws, it seems that the parallel sections do not prove helpful for providing a definition of willful. However, we find that 29 U.S.C. § 255 does provide the proper standard. Section 255 deals with the statute of limitations for actions under § 216 to recover unpaid minimum wages and overtime wages. It provides in relevant part that:

> Any action . . . to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . .
>> (a) . . . shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years . . . .

Thus, under § 255 a court must determine whether or not the failure to pay minimum wages or overtime compensation was willful to determine the applicable statute of limitations. This inquiry is identical to the inquiry necessary under § 13(b) of the Wage Act to determine whether liquidated damages should be awarded. The Ninth Circuit set out a definition of willfulness in the § 255 context in Marshall v. Union Pacific Motor Freight Co., 650 F.2d 1085, 1092-93 (9th Cir. 1981). In Marshall, the Court said:

Accordingly, we adopt the following rule for determining willfulness under section 255: A violation is willful when the employer was, or should have been, cognizant of an appreciable possibility that the employees involved were covered by the statutory provisions. Reliance on erroneous advice is no bar to a finding of a "willful" violation, except for good faith reliance upon advice rendered by an appropriate government agency.

Application of the Marshall standard to the instant case would result in a finding that Guerrero's failure to pay Elayda what he was owed was willful if Guerrero knew or should have known that there was a minimum wage and hours law in the Commonwealth.

Guerrero maintains that the trial judge's finding that there was no willful violation of the statute is a finding of fact and should not be set aside unless it is clearly erroneous. It is well settled, however, that if a trial court applies an incorrect legal standard to a question of fact, its finding is freely reviewable by an appellate court. United States v. Smith, 625 F.2d 278, 279 (9th Cir. 1980). In the instant case, the trial court did not set forth the legal standard it used when it found that there had been no willful violation. Its use of the term "willful intent," however, suggests that it was a standard that required Elayda to prove far more than the employer knew or should have known that his actions were covered by a statute. Although we have great difficulty conceiving a situation where an employer should not have known about the Wage Act, we feel that in this case that determination should be made by the trial court. We therefore remand to the trial court for further proceedings not inconsistent with this opinion.

////

////

D.  Attorney's fees.

Elayda contends that it was error for the trial judge to fail to award him attorney's fees under § 13(c). The trial court deemed his action to be an administrative appeal under 49 T.T.C. § 12. This statute lacks an attorney's fees provision. Elayda correctly contends that he asserted both 49 TTC § 12 and the Wage Act as separate bases for the court's jurisdiction. Section 13(c) of the Wage Act makes the award of attorney's fees to the prevailing plaintiff mandatory. The actual trial was not like an administrative appeal. The trial court vacated the labor division's findings and proceeded on a de novo basis. The issues which were litigated were identical to those which would be litigated in a Wage Act suit. The Wage Act does not require that administrative remedies be exhausted before suit can be filed. Failure to award attorney's fees in this case would discourage parties from prosecuting administrative remedies and would encourage them to file a lawsuit at the outset to assure that if they prevailed they could recover attorney's fees. Since the instant suit did proceed as if it were a Wage Act suit and that was one of the allegations pled, it seems equitable to award Elayda his attorney's fees pursuant to § 13(c).

We therefore affirm the trial court's decision to vacate the administrative findings and proceed de novo. We reverse the trial court's finding that there had been no minimum wage violation, the

////
////
////
////

1041

refusal to award liquidated damages, and the refusal to award attorney's fees. We remand the matter to the trial court for further proceedings to determine the appropriateness of liquidated damages and the amount of attorney's fees.

DATED this 3rd. day of July, 1984.

_____
JUDGE JUDITH N. KEEP

_____
JUDGE ALFRED LAURETA

_____
JUDGE HERBERT D. SOLL