2000 ME 66

**NEW ENGLAND OUTDOOR CENTER et al.[1]**

v.

**COMMISSIONER OF INLAND FISHERIES AND WILDLIFE.**

Supreme Judicial Court of Maine.

Argued Jan. 5, 2000.

Decided April 14, 2000.

---

1. The other petitioners are Crab Apple Whitewater, Inc., Magic Falls Rafting Co., Maine Whitewater, Inc., North Country Rivers, Inc., Professional River Runners of Maine, Inc., Three Rivers Whitewater, Inc., Unicorn River Expeditions, and Windfall Rafting Co.

Rufus E. Brown (orally), Brown & Burke, Portland, for the plaintiffs.

Andrew Ketterer, A.G., Dennis J. Harnish, A.A.G. (orally), Office of the Attorney General, Augusta, for the defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

■ [¶ 1] New England Outdoor Center and other whitewater outfitters (collectively NEOC) appeal from a judgment of the Superior Court (Kennebec County, *Studstrup, J.*) dismissing its appeal, brought pursuant to M.R. Civ. P. 80C, of a decision of the Commissioner of Inland Fisheries and Wildlife. The Commissioner determined that the parties-in-interest, Adventure Bound, Inc. and Northern Outdoors, Inc., were not "affiliated outfitters" within the meaning of 12 M.R.S.A. § 7363(2) (Supp.1999),[2] and declined to take further action to seek revocation of their licenses as commercial outfitters. *See* 12 M.R.S.A. § 7365 (1994 & Supp.1999). NEOC contends that the court erred when it dismissed the appeal based on the court's determination that the Commissioner's decision was not a final agency action within the meaning of 5 M.R.S.A. §§ 11001–11008 (1989) and M.R. Civ. P. 80C. NEOC also contends that the Commissioner's decision was arbitrary and capricious and a misapplication of law. It further claims that it had a due process right to a hearing because the Commissioner's decision effectively deprives it of a property right to be free from unfair competition in violation of 12 M.R.S.A. § 7369(2) (Supp.1999).[3] We affirm the Su-

---

2. The statute provides:
"Affiliated outfitter" means:
A. Any outfitter who owns directly, indirectly or through a chain of successive ownership 10% or more of the financial interest in any other outfitter;
B. Any outfitter, 10% or more of whose financial interests are owned directly or indirectly or through a chain of successive ownership by any other outfitter;
C. Any outfitter, 10% or more of whose financial interests are owned directly or indirectly or through a chain of successive ownership by a person who owns 10% or more of the financial interest in another outfitter; or
D. Any outfitter who, in the year 1982 or thereafter:
(1) Purchases, leases, borrows, accepts, receives or otherwise obtains on a non-arms-length basis from another whitewater outfitter, either directly or indirectly, more than ½ of its real or personal property; or
(2) Receives from another outfitter on a nonarms-length basis more than ½ of the ordinary services related to the business of whitewater outfitting, including, but not limited to, mail, telephone, reservations, repair, maintenance, personnel training and management.

A person may not be found to be an affiliated outfitter solely because of blood relationship, marriage or previous employment. An outfitter who purchases the business of another outfitter whose license has been returned to the Department as provided in section 7365, subsection 6, has 60 days from the date of sale to submit an affidavit applying for the selling outfitter's allocation, assuring that the level and quality of services of the selling outfitter will be maintained. If the Department transfers the selling outfitter's allocation to the buying outfitter or outfitters, these transferred allocations must be added to the buyer's allocations and may not be considered as affiliated. An outfitter may not receive more than the maximum allocations allowed under section 7369, subsection 3.
12 M.R.S.A. § 7363(2). The Act defines "financial interest" to include "any voting or nonvoting security, partnership interest whether limited or general, trust interest, joint venture interest or any other beneficial interest in any form of business association ."
12 M.R.S.A. § 7363(8).

3. The statute provides:
2. Allocation required; affiliated outfitters restricted. Except as provided in subsec-

perior Court's judgment of dismissal on the alternative ground that it is within the discretion of the Commission to not pursue license revocation actions against Adventure Bound and Northern Outdoors.

[¶ 2] NEOC, Adventure Bound, and Northern Outdoors all operate whitewater rafting businesses on the Kennebec River. As such, they are subject to the Commercial Whitewater Rafting Act, 12 M.R.S.A. §§ 7361–7370 (1994 & Supp.1999). The commercial outfitters subject to the Act are licensed, *see* 12 M.R.S.A. § 7365, and the Act limits the total number of passengers on the Kennebec River and the West Branch Penobscot River, *see* 12 M.R.S.A. § 7368. The Act limits the amount of passengers each outfitter can carry on a given day. *See* 12 M.R.S.A. § 7369(2). Affiliated outfitters, as defined in section 7363(2), are prohibited from operating simultaneously on "any river or stretch of river for which a specific allocation [of passengers per day] is required, even on days for which an allocation is not required." 12 M.R.S.A. § 7369(2).

[¶ 3] In 1998, NEOC wrote a letter to the Commissioner asking him to investigate whether Adventure Bound and Northern Outdoors were "affiliated outfitters" within the meaning of 12 M.R.S.A. § 7363(2). NEOC alleged that Adventure Bound and Northern Outdoors were affiliated, and that therefore their simultaneous operation on the Kennebec River between Harris Station and the Route 201 bridge was in violation of 12 M.R.S.A. § 7369(2). NEOC based its allegation on the contention that, although Adventure Bound and Northern Outdoors may ostensibly have been set up to avoid the ten percent stock ownership limit set out in section 7363(2), the companies nevertheless were under the control of a single party, namely, Wayne Hockmeyer.[4] NEOC's letter concluded with a request that it be involved in the investigation and asked that it be allowed access to documents having a bearing on the affiliated outfitter status of Adventure Bound and Northern Outfitters.

[¶ 4] In response to NEOC's request, the Commissioner appointed an investigator, and asked Adventure Bound and Northern Outdoors to disclose "any and all documentation and factual information which will substantiate previous assurances that both companies are in full compliance with affiliation provisions of the Maine Commercial Whitewater Rafting Act." NEOC addressed a letter to the investigator illustrating its understanding of the Act, and made specific suggestions regarding the evidence it felt the investigator should seek. In this letter, NEOC again requested that it be involved in the investigation, and formally requested a public hearing "to determine whether the Department should file a complaint in Administrative Court to revoke the licenses

---

tion 10, operation of a commercial whitewater trip on the Kennebec River between Harris Station and West Forks or on the West Branch Penobscot River between McKay Station and Pockwockamus Falls without an allocation or in excess of an allocation is prohibited. An allocation is not required for other rivers or for other stretches of those rivers. Not more than one member of an affiliated group may conduct whitewater trips on any river or stretch of river for which a specific allocation is required, even on days for which an allocation is not required.

Three or more years after the period of affiliation, the Department may, in its discretion, consider requests by any former member of an affiliated group to run passengers on allocated rivers. The burden rests on the former member of an affiliated group to demonstrate that the reasons for any finding of affiliation have been so diminished *in effect that the public interest will be served by considering the former member's request to run passengers on an allocated river.*

12 M.R.S.A. § 7369(2).

4. Wayne Hockmeyer owned 80.2% of Adventure Bound, while Suzanne Hockmeyer and James Yearwood each owned 9.9%. In contrast, Suzanne (as trustee of the Suzanne Hockmeyer Revocable Living Trust) owned 70.3% of Northern Outdoors, *while* Wayne (as trustee of the Wayne Hockmeyer Revocable Living Trust), James Yearwood, and Douglas Hall each owned 9.9%.

of the two companies by reason of the affiliation."

[¶ 5] After receiving and reviewing substantial written submissions from Adventure Bound and Northern Outdoors, but without conducting a public hearing, the Commissioner responded to the complaint by letter to counsel for NEOC on September 8, 1998. The Commissioner indicated that the evidence presented did not demonstrate that Adventure Bound and Northern Outdoors were "affiliated outfitters." Noting that his letter did not constitute a "final agency action," the Commissioner stated that, despite NEOC's contention that the definition of "affiliated outfitter" is broad, the Commissioner had applied the plain language of 12 M.R.S.A. § 7363(2) in its determination the two outfitters were not affiliates. The Commissioner indicated that he understood NEOC not to contend that there were any violations of subsections A, B, or C of section 7363(2), and he therefore focused his discussion on subsection D. As the Commissioner interpreted that subsection, an inquiry into whether transactions between outfitters were at arm's length becomes necessary only if it is shown that one outfitter had received more than half of its services or real or personal property from the other. Because there was no evidence that either Adventure Bound or Northern Outdoors had obtained more than one-half of their services or property from the other, the Commissioner felt it was unnecessary to proceed further with NEOC's complaint until such evidence was produced. The Commissioner also noted that no provision in the Act required revocation of the licenses of Adventure Bound and Northern Outdoors even in the event the companies were "affiliated outfitters." The statute prohibits only their simultaneous operation on any stretch of the river.

[¶ 6] On October 7, 1998, NEOC requested reconsideration of the Commissioner's decision. NEOC denied that it had not challenged the relationship between Adventure Bound and Northern Outdoors on grounds of section 7363(2)(A), (B), and (C), and asserted that the Commissioner's response to its complaint not only unfairly placed a burden of production on it but also "fail[ed] to recognize the burdens ... on the constitutionally protected rights of the complainants." Pointing to 12 M.R.S.A. § 7363(8), NEOC alleged that the Commissioner had failed to properly inquire into whether Wayne Hockmeyer owned some kind of "beneficial interest" in some "form of business association" that would trigger the 10% ownership limitation. From this, NEOC contended, the Commissioner was required by the statutory language "to scrutinize [the companies' relationship's] substance and reality," and that such scrutiny required an independent investigation. NEOC also alleged that it was unfair to essentially require it to produce evidence of affiliation when the Commissioner had refused its request for an independent investigation and for a hearing. NEOC further contended that the unfair competitive advantage that Adventure Bound and Northern Outdoors retained as a result of the Commissioner's inaction deprived it of a cognizable property right in violation of due process under both the Maine and United States Constitutions.

[¶ 7] In response, on October 20, 1998, the Commissioner indicated that his interpretation of the Act had not changed and noted that the evidence before him remained the same. He therefore refused NEOC's request that an investigatory procedure be developed to further pursue the matter.

[¶ 8] On November 23, 1998, NEOC filed its complaint in Superior Court, seeking review of a final agency action and an independent action for deprivation of property in violation of due process. The Superior Court, although acknowledging the potential competitive advantage that affiliated outfitters might have if allowed to operate simultaneously, found that there was no "final agency action" for it to review. The court noted that there had been

no change in the licensing or allotments awarded, nor had any regulation been adopted or discarded. The only "action" the court found was a decision that the case for affiliation was not "made to the Commissioner's satisfaction," the court noting that the Commissioner had not precluded future action if additional evidence of affiliation came to light. The court found that there had been no failure or refusal to act allowing review pursuant to 5 M.R.S.A. § 11002, and pointed out that the Commissioner had acted on NEOC's request and had issued an opinion. The court recognized that the Commissioner had the primary responsibility to determine whether outfitters were affiliated, and concluded that it could not second-guess the Commissioner's decision not to pursue a complaint in the Administrative Court without violating the doctrine of separation of powers. The court further rejected NEOC's claim that it had a constitutionally protected right to fair competition, and concluded that, to the extent NEOC had a property right in its allocation, it had not lost any of that allocation. Accordingly, the Superior Court dismissed the appeal. NEOC then filed this appeal.

■■■ [¶ 9] Our law governing the separation of powers under the Maine Constitution is well developed. Article III, section 2 of our constitution provides that "[n]o person or persons, belonging to one of [the legislative, executive, or judicial] departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein *expressly* directed or permitted." ME. CONST. art III, § 2 (emphasis added); *see also State v. Hunter,* 447 A.2d 797, 799 (Me.1982). Pursuant to this provision, "the separation of governmental powers mandated by the Maine Constitution is much more rigorous than the same principle as applied to the federal government." *Hunter,* 447 A.2d at 799. Accordingly, in addressing questions concerning the separation of powers, we ask whether "the power in issue [has] been explicitly granted to one branch of state government, and to no other branch?" *Id.* at 800.

■■■ [¶ 10] Agencies of the executive branch are "accord[ed] ... the deference to which a co-equal branch of our state government is entitled." *Kuvaja v. Bethel Sav. Bank,* 495 A.2d 804, 806 (Me.1985). In *Brown v. State, Dep't of Manpower Affairs,* 426 A.2d 880 (Me.1981), we noted that

[t]he broad language of 5 M.R.S.A. § 8002(4) (defining final agency action) and 5 M.R.S.A. § 11001(1) (conferring jurisdiction on the Superior Court to review final agency action) must be read in light of the constitutional doctrine of separation of powers. The Legislature may not constitutionally confer on the judiciary a commission to roam at large reviewing any and all final actions of the executive branch. Some executive action is by its very nature not subject to review by an exercise of judicial power.

*Id.* at 884 (citations omitted). Thus, even when an agency action is final, it does not follow that the action is subject to judicial review. *See id.*

[¶ 11] In *Bar Harbor Banking & Trust Co. v. Alexander,* 411 A.2d 74 (Me.1980), the Superior Court had enjoined a public investigatory hearing by the Superintendent of the Bureau of Consumer Protection. *Id.* at 75. We first determined that an exception to the final judgment rule allowed us to review the issuance of the injunction, declaring that

[t]he constitutionally mandated separation of powers forbids precipitous injunctive interference with the legitimate, ongoing executive function. Moreover, judicial interference with apparently legitimate executive department activity not only disrupts the administrative process but also encourages the circumvention of statutorily authorized investigation and enforcement mechanisms.

*Id.* at 77 (citations omitted). On the merits of the appeal we held that the Superior Court's order "directly interfered with the

performance by the agency of its statutory duties. Under such circumstances, the doctrine of primary jurisdiction forbids the issuance of such a restraining order." *Id.* at 78. Although the decision in *Bar Harbor Banking* ultimately rested on the fact that the agency was statutorily authorized to conduct the hearing, we made clear that the temporary restraining order issued by the trial court improperly interfered with the agency's investigation.

[¶ 12] In the present case, the Department is authorized to investigate the affiliated status of any outfitter that seeks an allocation. The statute, however, does not require that an investigation be conducted in a specific way, nor that it be formal and open to the public. Accordingly, were a court to order the Department to conduct such an investigation, it would be improperly interfering with the agency's discretionary power to investigate. Such a result is inconsistent with settled principles of the separation of powers. We therefore affirm the judgment dismissing the appeal on this ground.

The entry is:

Judgment of dismissal affirmed.