2000 ME 162

**In re WAGE PAYMENT LITIGATION.[1]**

Supreme Judicial Court of Maine.

Argued June 5, 2000.
Decided Aug. 29, 2000.

---

1. The individual cases that were consolidated for this appeal are: *Basinger v. Wal–Mart Stores, Inc.*, CV–98–351 (Me.Super. Ct. Cumberland Cty., Nov. 8, 1999); *McNabb v. Star-*

wood Hotels & Resorts, Inc., CV–98–359 (Me.Super. Ct. Cumberland Cty., Nov. 8, 1999); *Pelletier v. Burger King*, CV–98–344 (Me.Super. Ct. Cumberland Cty., Nov. 8, 1999); *Simpson v. Harper Hotels, Inc.*, CV–98–383 (Me.Super. Ct. Cumberland Cty., Nov. 8, 1999); *Newcomb v. The Newark Group*, CV–98–192 (Me.Super. Ct. Kennebec Cty., Nov. 8, 1999).

Gerald F. Petruccelli (orally), Petruccelli & Martin, LLP, Donald F. Fontaine, Jonathan S.R. Beal, Nicolaas W. Groenenveld–Meijer, Fontaine & Beal, P.A., Portland, James W. Case, McTeague Higbee Case Watson Cohen & Whitney, P.A., Topsham, for appellants.

William J. Kayatta Jr. (orally), Ann L. Rudisill, K. Douglas Erdman, Pierce Atwood, Michael G. Messerschmidt, Gregory P. Hansel, Matthew J. LaMourie, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, John H. Rich III, William J. Sheils, Perkins, Thompson, Hinckley & Keddy, P.A., John W. Chapman, Kelly & Chapman, Philip J. Moss, Jonathan Shapiro, Moon, Moss, McGill, Hayes & Shapiro, P.A., Portland, for appellees.

Andrew Ketterer, Attorney General, Gwendolyn D. Thomas, Asst. Atty. Gen., Augusta, for amicus curiae Maine Bureau of Labor Standards.

Panel: CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Five classes of employees appeal judgments of dismissal of their complaints against their employers asserting that their employers' practice of paying them on a bi-weekly basis created causes of action pursuant to 26 M.R.S.A. § 621 (1988 & Supp.1998) (concerning the timely payment of wages), *repealed by* P.L.1999, ch. 465, § 1 (effective September 18, 1999), and 26 M.R.S.A. § 626–A (1988 & Supp. 1998) (concerning penalties and rights of action for violations by employers), *amended by* P.L.1999, ch. 465, § 1 (effective Sept. 18, 1999); 26 M.R.S.A. § 664 (1988 & Supp.1999) (proscribing minimum wage requirements); the Federal Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219 (1998); and in common law unjust enrichment. Determining that the Superior Court (Cumberland and Kennebec Counties, *Crowley, J.*) properly dismissed their complaints, we affirm the judgments.

## I. PROCEDURAL HISTORY

[¶ 2] The plaintiffs in this case are hourly workers in the service industry who were paid by their employers on a bi-weekly basis. The defendants are service industry corporations. The five lawsuits that constitute this consolidated appeal were filed in 1998. These suits all alleged the same claims against different employers. The Superior Court (*Mills, J.*) conducted a conference of all counsel in October 1998 to encourage the parties to resolve the cases on some consolidated basis. The cases were in various procedural stages. Discovery had been commenced in some, motions for summary judgment had been filed in others, and motions to certify a class had been filed in still others. Following the conference, the parties produced a joint stipulation regarding the resolution of common legal issues, and the defendants filed a consolidated motion to dismiss. Although the motion was filed by the defendants after some discovery had occurred, the parties and the court agreed to treat the cases under the procedure used for motions to dismiss. No discovery, affidavits, or stipulations of fact were relied upon. The motion court (*Crowley, J.*) granted the employers' motions to dismiss in all respects. The employees then filed this appeal.

## II. STANDARD OF REVIEW AND RULES OF CONSTRUCTION

[¶ 3] Dismissal of a complaint is proper only when the complaint fails to state a claim for which relief may be granted. *See* M.R. Civ. P. 12(b)(6). "A motion to dismiss tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85 (citing *Richards v. Soucy*, 610 A.2d 268, 270 (Me.1992)). For the purposes of a motion made pursuant to Rule 12(b)(6), "the material allegations of the complaint must be taken as admitted." *Livonia*, 1998 ME 39, ¶ 5, 707 A.2d at 85 (citing *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 98 (Me.1984)). When reviewing a dismissal, we examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *See Livonia*, 1998 ME 39, ¶ 5, 707 A.2d at 85. "A dismissal should only occur when it appears 'beyond doubt that [the] plaintiff[s] [are] entitled to no relief under any set of facts that [they] might prove in support of [their] claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me.1994) (quoting *Hall v. Board of Envtl. Protection*, 498 A.2d 260, 266 (Me.1985)).

[¶ 4] We review the interpretation of a statute de novo for errors of law. *See Daniels v. Tew Mac Aero Servs., Inc.*, 675 A.2d 984, 987 (Me.1996). When construing a statute, we seek to give effect to the legislative intent by examining the

plain meaning of the statutory language. *See Estate of Whittier,* 681 A.2d 1, 2 (Me. 1996). If the plain meaning of the text does not resolve an interpretative issue raised, we then consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent. *See Arsenault v. Crossman,* 1997 ME 92, ¶ 7, 696 A.2d 418, 421. In ascertaining legislative intent, we interpret the section of the statute in the context of the statutory scheme in which it is found. *See City of Rockland v. Doud,* 1998 ME 238, ¶ 5, 721 A.2d 981, 982. Moreover, although an agency's interpretation of a statute it is charged with administering is not binding on this Court, we will accord that interpretation substantial deference "unless the statute plainly compels a contrary result." *Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d 1304, 1306 (Me.1996); *see*

also *Davric Maine Corp. v. Maine Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289, 293.

### III. TIMELY WAGE PAYMENT STATUTE

▉▉▉ [¶ 5] The employees allege that their employers' practice of paying them on a bi-weekly basis is a violation of 26 M.R.S.A. §§ 621, 626–A.[2] Because of these violations, they contend that they are entitled to enforce a civil forfeiture of $100 to $500 per violation and, in addition, to recover treble damages, costs, and attorney fees.

#### A. Private Rights of Action for Civil Forfeitures

[¶ 6] The plaintiffs contend that the motion court erred in holding that 26

---

2. The statutes provide:

**§ 621. Time of payment**

**1. Certain employers; weekly payment required.** Every corporation, person or partnership engaged in a manufacturing, mechanical, mining, quarrying, mercantile, restaurant, hotel, summer camp, beauty parlor, amusement, telegraph or telephone business; in any of the building trades; in logging or lumbering operation; upon public works, or in the construction or repair of roads, bridges, sewers, gas, water or electric light works, pipes or lines; every incorporated express company or water company; and every steam railroad company or corporation shall pay weekly each employee engaged in his or its business the wages earned by the employee to within 8 days of the date of that payment; .every county and city shall so pay every employee who is engaged in its business the wages or salary earned by him, unless the employee requests in writing to be paid in a different manner. Every town shall so pay each employee in its business if so required by the employee. An employee who is absent from his regular place of employment at a time fixed for payment shall be paid thereafter on demand.

**2. All employers; payment of balance of hourly wages.** Any employer, regardless of whether enumerated in subsection 1, shall pay to its employee, on or before the employee's next regularly scheduled payday, the balance of the employee's earned hourly wages due to be paid which were not paid on the date normally scheduled for payment

of those wages. This subsection shall not be construed to permit nonpayment or withholding of payment of wages when due. 26 M.R.S.A. § 621 (1988 & Supp.1998), *repealed by* P.L.1999, ch. 465, § 1.

**§ 626–A. Penalties**

Whoever violates any of the provisions of sections 621 to 623 or section 626, 628 or 629 shall be subject to a forfeiture of not less than $100 nor more than $500 for each violation.

Any employer shall be liable to the employee or employees for the amount of unpaid wages. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, a reasonable rate of interest, an additional amount equal to twice the amount of such wages as liquidated damages and costs of suit including a reasonable attorney's fee.

The action for unpaid wages may be brought by either the affected employee or employees or by the Department of Labor. The Department of Labor is further authorized to supervise the payment of the judgment, collect the judgment on behalf of the employee or employees and collect fines incurred through violation of this subchapter. When the Department of Labor brings an action for unpaid wages, this action and an action to collect a civil forfeiture may both be joined in the same proceeding. 26 M.R.S.A. § 626–A (1988 & Supp.1998), *amended by* P.L.1999, ch. 465, § 1.

M.R.S.A. § 626–A does not allow for a private right of action for employees to collect forfeitures against their employers. Section 626–A provides for a forfeiture of $100 to $500 for each violation to be enforced against a party when that party is in violation of sections 621, 622, 623, 626, 628, or 629. *See* 26 M.R.S.A. § 626–A. The statute, however, does not state to whom that forfeiture is payable.

[¶ 7] Because section 626–A does not state that a private right of action exists, such a right of action can only be implied. In *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97 (Me.1984), we dealt with a similar issue of whether 26 M.R.S.A. § 630[3] contains a private right of action to assert a civil forfeiture. *See Larrabee,* 486 A.2d at 101. We noted that when the Legislature deems it "essential that a private party have a right of action, it has expressly created one." *Id.* For the purpose of the creation of a private right of action, the Legislature expresses its intent in the statutory language or in the legislative history.

[¶ 8] In the present case, it is clear that sections 621 and 626–A were enacted for the benefit of wage earners and that these plaintiffs are wage earners. We examine whether there is any indication of legislative intent to create or deny a private remedy of forfeiture, and whether implying the existence of such a remedy is consistent with the underlying purpose of the legislative scheme.

[¶ 9] In *Larrabee,* we concluded that section 630 created no private right of action to enforce a forfeiture. *See Larrabee,* 486 A.2d at 101. Section 626–A has language similar to that of section 630 and is part of the same legislative scheme. *See* 26 M.R.S.A. §§ 621–634 (1988 & Supp.1998). These provisions should be interpreted harmoniously. *See Estate of Whittier,* 681 A.2d at 2.

[¶ 10] Moreover, title 17–A, section 4–B states that "civil violations . . . are enforceable by the Attorney General, his representative or any other appropriate public official in a civil action to recover what may be designated a fine, penalty or other sanction, or to secure the forfeiture that may be decreed by the law ." 17–A M.R.S.A. § 4–B (Supp.1999). The civil forfeiture referenced in section 626–A is the type of "civil violation" that is solely enforceable by the Attorney General unless otherwise specified. *Cf. Larrabee,* 486 A.2d at 101. We discern no intention on the part of the Legislature, from either the plain language of the statute or the legislative history, that would provide for a private right of action under section 626–A to enforce the civil forfeiture. Moreover, our interpretation is in harmony with that of the Department of Labor, which has maintained that the pursuit of these penalties is its exclusive province. *See Maine Bankers Ass'n v. Bureau of Banking,* 684 A.2d at 1306 (holding that deference should be given to an agency's interpretation of a statute it is charged with enforcing). The Department may elect to pursue such remedies, but the decision to do so is a discretionary one. *See New England Outdoor Ctr. v. Commissioner of Inland Fisheries & Wildlife,* 2000 ME 66, ¶ 12, 748 A.2d 1009, 1014.

### B. Wages Paid Late vs. Unpaid Wages Pursuant to Section 626–A

[¶ 11] The employees also contend that the motion court erred in dismissing their claims for unpaid wages, liquidated damages, and attorney fees under section 626–A by concluding that "late" wages were not "unpaid" wages. Section 626–A in ef-

---

3. As it read at the time of *Larrabee,* section 630 stated:

 An employer shall, upon written request of the affected employee, give that employee the written reasons for the termination of his employment. An employer who fails to satisfy this request within 15 days of receiving it may be subject to a forfeiture of not less than $50 nor more than $500.

 26 M.R.S.A. § 630 (Supp.1984–1985).

fect at the time these cases were initiated stated:

> Any employer is liable to the employee or employees for the amount of unpaid wages and health benefits. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover *unpaid wages or health benefits under this subchapter,* such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, costs of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages.

26 M.R.S.A. § 626–A. Section 621 required that wages were to be paid by the employers on a weekly basis. *See* 26 M.R.S.A. § 621.[4] Therefore, the employees contend, as soon as a week passes without payment, such wages are "unpaid" under the statute, and a cause of action thus accrues for those wages, costs, attorney fees, and liquidated damages. *Cf. Alie v. Nadeau,* 93 Me. 282, 285, 44 A. 891, 891–92 (1899) (holding that a cause of action for unpaid wages accrues on each instance that the wages are not paid).

[¶ 12] The right of the employee created by section 626–A is to sue to collect "unpaid wages under this subchapter." 26 M.R.S.A. § 626–A. The term "unpaid wages," however, is not explicitly defined in section 626–A, nor is it defined in section 621. It is appropriate, then, to look to the legislative scheme of which it is a part to ascertain the meaning of "unpaid wages." *See City of Rockland,* 1998 ME 238, ¶ 5, 721 A.2d at 982. We have previously stated that "unpaid wages" under section 626–A "[are] precisely what [are] owing when an employer does not pay an employee for work." *Cooper v. Spring-*

*field Terminal Ry. Co.,* 635 A.2d 952, 955 (Me.1993). It is not disputed that, in the case of these employees, their wages were ultimately paid.

[¶ 13] Pursuant to section 626, the right to collect or enforce an action for an "unpaid" wage accrues when an employer fails to pay an employee after termination of employment and upon that employee's demand for payment. *See* 26 M.R.S.A. § 626 (1988 & Supp.1999). Under section 626, "[a]n employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid." *Id.* The statute states further that "[f]or the purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made." *Id.*

[¶ 14] When the employee remains employed but asserts that some or all of his or her earned wages are "unpaid," the right to sue to collect unpaid wages accrues if an employee is not paid on the employee's regularly scheduled payday, and the difference is not made up by the next regularly scheduled payday. *See* 26 M.R.S.A. § 621(2).

[¶ 15] Thus, the statute reveals a legislative intent to allow a *private litigant* recourse against an employer for an unpaid wage only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, *see* 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, *see* 26 M.R.S.A. §§ 621, 626–A.[5]

---

4. This provision has since been repealed, and section 626 has been amended. *See* P.L.1999, ch. 465, § 1.

5. A different reading of section 621(2), urged by the employees, would render the section superfluous. If an employer fails to pay his

employees in a timely manner, the employees must be paid by their next pay period. *See* 22 M.R.S.A. § 621(2). If a "late" wage was automatically an "unpaid" wage, the mandatory language of this section would be superfluous because employees would have already accrued a cause of action against their employ-

[¶ 16] The employees note that section 621 explicitly states that "[t]his subsection shall not be construed to permit nonpayment or withholding of wages when due." 26 M.R.S.A. § 621(2). They argue that this language precludes a construction of the statute that allows employers to catch up on their payment of wages by the next pay period. We disagree. First, that sentence—if read the way that the employees contend—would obviate the language in section 621 requiring that employers make up late wages by the next payday. Second, if an employer pays all wages in full by the next pay period, although that employer is not subject to an employee's private right of action under section 626–A, nevertheless the employer *is* subject to a civil forfeiture brought by the Attorney General pursuant to the same section. Accordingly, a wage paid in full, but paid late, is not "unpaid" under section 621. The remedy for the enforcement of a "late" wage is the not insignificant civil forfeiture penalties that can be brought by the Attorney General.[6] Only if a wage remains "unpaid" beyond the time frames set out in sections 621(2) or 626 may an employee recover in a private right of action.

## IV. MINIMUM WAGE CLAIM

[¶ 17] The employees next claim that their employers' practice of bi-weekly payment also constituted a violation of 26 M.R.S.A. §§ 661–672, which establishes minimum wage requirements for work performed in Maine. The employees do not contend, however, that the employers have violated the minimum wage statute as to the *amount* of the hourly wage paid; rather, they argue that this claim should not have been dismissed because a "minimum wage" must be paid promptly when due, and that they could prove facts to show a violation of this requirement.

[¶ 18] The minimum wage statute, however, contains no time-of-payment language. The protection granted by the statute is of a different kind than the protections provided for in section 621. The statute is meant to protect employees from being paid too little. Sections 621 and 626–A protect employees from not being paid in a timely manner. Enforcement of the time of payment of employees is limited to the scheme expressly provided by the Legislature in sections 621 and 626–A. The employees' claims under the Act were properly dismissed.

## V. UNJUST ENRICHMENT

[¶ 19] The plaintiffs contend that the court erred in dismissing their claim for unjust enrichment. We disagree. " 'Unjust enrichment describes recovery for the value of the benefit retained *when there is no contractual relationship*, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay.' " *Lynch v. Ouellette,* 670 A.2d 948, 950 (Me.1996) (emphasis added) (quoting *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105 n. 3 (Me.1994)).

[¶ 20] In these cases, a contractual relationship between the employers and the employees exists, creating an employment relationship. *Cf. Burnell v. Town of Kingfield,* 686 A.2d 1072, 1074 (Me.1996) (discussing indefinite employment contracts). This contract of employment between the parties precludes the plaintiffs from maintaining a cause of action for unjust enrichment.

---

er. *Cf. Alie,* 93 Me. at 285, 44 A. at 891–92. Because that wage is merely "late" and not yet "unpaid," an employer is not liable in a private cause of action to an employee unless and until that employer fails to pay the employee by the next pay period.

6. The fact that no civil forfeiture penalties were sought by the Attorney General against the employers in these cases does not require that we construe the statutes differently. A decision by the Attorney General to seek a civil penalty is discretionary. *See New England Outdoor Ctr. v. Commissioner of Inland Fisheries & Wildlife,* 2000 ME 66, ¶ 12, 748 A.2d 1009, 1014.

## VI. FEDERAL FAIR LABOR STANDARDS ACT

 [¶ 21] *Basinger v. Wal–Mart,* one of the five cases consolidated for this appeal, was removed to the United States District Court for the District of Maine. The United States District Court (*Hornby, C.J.*) adopted the recommendation of the United States Magistrate Judge (*Cohen*) that Wal–Mart was entitled to a summary judgment on the employees' Fair Labor Standards Act claims filed pursuant to 29 U.S.C.A. §§ 201–219. *See Basinger v. Wal–Mart Stores, Inc.,* No. 98–334–P–H (D.Me. Mar.9, 1999). The United States District Court subsequently declined to exercise supplemental jurisdiction and remanded the case to the Superior Court. *See* 28 U.S.C.A. § 1367(a) (1993) (providing for supplemental jurisdiction). This decision is the law of the case as to the *Basinger* plaintiffs. *See Blance v. Alley,* 404 A.2d 587, 589 (Me.1979).

[¶ 22] The magistrate judge reasoned in his recommendation that " '[t]here is nothing in the [FLSA] that says a pay period has to be one week or that employees must be paid weekly.' " *Basinger,* No. 98–334–P–H, slip op. at 7 (quoting *Marshall v. Allen–Russell Ford, Inc.,* 488 F.Supp. 615, 618 (E.D.Tenn.1980)). Moreover, the court held that violations of section 621 are insufficient to trigger a violation of the FLSA. *See Basinger,* No. 98–334–P–H, slip op. at 10. The court concluded that the FLSA claims are governed by the First Circuit's decision in *Serapion v. Martinez,* 119 F.3d 982 (1st Cir.1997), in which that court stated that " 'courts ought to presume that the interpretation of a federal statute is not dependant on state law.' " *Basinger,* No. 98–334–P–H, slip op. at 8 (quoting *Serapion,* 119 F.3d at 988). The District Court held that the plaintiff's attempt to peg enforcement of the FLSA to the State Prompt Wage Payment Act would undermine the congressional policy of uniformity of enforcement in all states. *See Basinger,* No. 98–334–P–H, slip op. at 8.

[¶ 23] Thus, adopting the magistrate's recommendation in full, the United States District Court found no violation of the FLSA in *Basinger.* That court's decision is persuasive and we find no error in the Superior Court's decision to adopt its rationale as to all of the other class plaintiffs in the present case.

The entry is:

Judgments affirmed.

CALKINS, J., dissenting.

[¶ 24] I concur in Part III–A of the opinion holding that 26 M.R.S.A. § 626–A does not provide employees a private right of action against their employers to collect forfeitures.[7] I believe that *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97 (Me.1984) compels that holding. I also concur in Parts IV, V, and VI concerning the employees' minimum wage, unjust enrichment, and Federal Fair Labor Standards Act claims. I respectfully dissent in Part III–B because I conclude that 26 M.R.S.A. §§ 621 and 626–A granted employees, who were entitled to be paid weekly and were not paid weekly, the right to bring an action to collect their unpaid wages.

[¶ 25] I start with the requirement in section 621 that the employers in this case were to have paid their employees weekly. No one in this litigation disputes that basic premise. The disagreement is whether the employees can enforce their statutory right by bringing an action to collect those wages not paid weekly.

---

7. In this dissent, I refer to the versions of 26 M.R.S.A. §§ 621 and 626–A in effect at the time the complaints were filed. *See* 26 M.R.S.A. §§ 621 and 626–A (1988 & Supp. 1998). As noted in the opinion, section 621 was repealed by P.L.1999, ch. 465, § 1, and section 626–A was amended by P.L.1999, ch. 465, § 1 (*see* 26 M.R.S.A. § 626–A (Supp. 2000)).

[¶ 26] In interpreting the statutes, I note the fact that sections 621 and 626–A were remedial wage statutes, obviously intended to remedy problems faced by low-wage workers living from paycheck to paycheck. We have said that such statutes must be construed liberally. *See Director of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300 (Me.1987).

[¶ 27] Section 626–A allows an employee to bring an action for unpaid wages. The statute, as it was worded at the time these actions were filed, implicitly referred to violations of section 621, as well as other statutory provisions, as a basis for an action for unpaid wages, by referring to those sections in the first paragraph. The opinion concludes that the wages of these employees were not "unpaid," that they were merely "late," in spite of the fact that the statutory scheme makes no distinction between "late" wages and "unpaid" wages. In fact, there is no mention in the statutes of "late" wages.

[¶ 28] The opinion decides that wages are "unpaid" in two situations: (1) when an employer fails to pay an employee after employment is terminated and the employee has made a demand for the wages, and (2) when an employer fails to pay the employee on the payday following the payday when the wages were due. We are not concerned with the former situation because we are not dealing with terminated employees.

[¶ 29] The opinion determines, with regard to current employees, that wages are "unpaid" only when not paid on the payday after the payday on which they are due. The only portion of the statutory scheme that allowed payment on the next payday was section 621(2). That section stated that an employer "shall pay to its employee, on or before the employee's next regularly scheduled payday, the balance of the employee's earned hourly wages due to be paid which were not paid on the date normally scheduled for payment of those wages." The section assumed a regularly scheduled payday at which time employees were generally paid what was due them. Common sense dictates that if an employer was required to pay its employees weekly, the employer must have established a weekly payday. In section 621(2) the Legislature was not authorizing employers, required to pay weekly, to establish a regularly scheduled payday on a biweekly or monthly basis, or on any basis other than a weekly basis. Yet, that is exactly what the employers in this case did: they established a biweekly regular payday for their employees whom the employers were required to pay weekly.

[¶ 30] Section 621(2) simply dealt with the nonrecurring situation of wages not paid on the regularly scheduled payday, and it required the employer to pay on the next payday. In fact, section 621(2) further stated that it "shall not be construed to permit nonpayment or withholding of payment of wages when due." The opinion allows employers to ignore the weekly payment requirement so long as they pay their employees by the next regularly scheduled payday, whenever it is. Such a result was not authorized by the plain meaning of the statute, and, therefore, it was not what the Legislature intended.

[¶ 31] The opinion suggests that an employer who established a biweekly payday for its employees, who were supposed to be paid weekly, did so at the employer's peril because the Department of Labor could have sought a forfeiture against the employer. If the Department, however, failed to enforce the weekly pay requirement, employees were without a remedy if they were not allowed to bring an action for the unpaid wages.[8]

---

8. "Every person, for an injury done him in his person, reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." MAINE CONST. art. I, § 19.

[¶ 32] I conclude that the plain meaning of sections 621 and 626–A required employers to pay wages to these employees weekly, and, when the wages were not paid weekly, they were unpaid. The employees are entitled to proceed with their statutory remedy for unpaid wages. For this reason I would vacate the dismissal of the employees' claims for unpaid wages.