STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland ss. Clerk's Office

JUN 27 2012

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-11-26
TDW - CUM - 

LELAND B. COURTOIS

    Plaintiff

v.

                                  ORDER

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM, et al,

    Defendants.

Before the court is the appeal in the above captioned case. In this appeal, brought pursuant to Rule 80C Leland Courtois challenges a ruling by the Maine Public Employees Retirement System (MSRS) that Courtois, who began receiving disability retirement benefits since 1998, exceeded the income limitations for disability retirement in 2009, resulting in the discontinuation of his disability retirement benefits and an order directing him to repay MSRS $ 8,243.26.[1]

Courtois is a former employee of the City of Portland who worked as a real estate tax assessor and began receiving disability benefits in 1998. Under the applicable statute, after an incapacity qualifying an employee for disability benefits has continued for two years, it must render the recipient unable to engage in any "substantial gainful activity" for which the member is qualified by training education or experience. 5 M.R.S. § 18521(1)(C). If a recipient receives "compensation . .  from engaging in any gainful activity or from  employment" that exceeds a specified amount, the excess must be deducted from the disability benefit and if the disability benefits are thereby

---

[1] Counsel for MSRS has advised the court that Courtois is now receiving service retirement benefits.

eliminated, the disability is deemed to no longer exist and the payment of disability benefits must be discontinued. 5 M.R.S.§ § 18530(2)(A), (2)(B).

Under Rule 80C and 5 M.R.S. § 11007(C), an agency's decision will be reviewed for abuse of discretion, error of law, or findings not supported by substantial evidence in the record. E.g., Rangeley Crossroads Coalition v. Land Use Regulation Commission, 2008 ME 115 ¶ 10, 955 A.2d 223, 227.[2] The court may not substitute is own judgment for that of the agency and must affirm findings of fact if they are supported by substantial evidence in the record. An agency's interpretation of the governing statute and its rules and regulations and procedures will be afforded deference and will not be set aside unless the statute of the rules or regulations plainly compel a contrary result. Id.

1. Procedural Arguments

At the outset Courtois raises a number of procedural arguments. The first of these is that, in the annual statement of compensation that MSRS sends to persons receiving disability retirement benefits, MSRS asked for more information than it was statutorily entitled to receive. As a result, Courtois argues, MSRS was not allowed to base its determination on that information.

Courtois is correct that 5 M.R.S. § 18531 directs MSRS to require recipients of disability benefits to submit an annual statement of "compensation received from any gainful occupation." The form actually sent by MSRS in that case asked Courtois whether he had been required to file a Federal Income Tax return for 2009 and if so, to enclose a copy of that return. (R. 1.12). It also asked Courtois if he had any income other than MSRS disability and if so, to list any wages from employment and any income

---

[2] Agency decisions may also be reversed for constitutional or statutory violations, if they are in excess of statutory authority, or are made upon unlawful procedure. 5 M.R.S.§ 11007(C)(1)-(3).

2

from "other sources (e.g. rentals, unemployment, royalties, subchapter S partnerships, farm income)." Id. In response Courtois reported $ 23,061 in wages from Maine Medical Center and $11,936 in net rental income, which in combination exceeded the applicable earnings limitation of $26,754.03. See R.1.6.

Courtois does not dispute that his Maine Medical Center wages constituted compensation but argues that his rental income – which put him over the earnings limitation – was not compensation and that therefore MSRS was not allowed to ask for that information under § 18531. There are three problems with this argument.

The first is that it is entirely circular. If the rental income constituted "compensation" from a gainful activity or occupation, then under the interpretation proffered by Courtois, MSRS was allowed to ask for that information and to determine that Courtois had exceeded the earnings limitation in 5 M.R.S. § 18530(2). If the rental income did not constitute "compensation" from a gainful activity or occupation, then according to Courtois, MSRS was not allowed to ask for that information and could not include it in determining whether he exceeded the income limitation. As a result, even if Courtois's procedural argument were accepted, it fails if MSRS correctly determined on the merits that his rental income was compensation from a gainful activity.

Second, the court does not agree with the limitation that Courtois reads into the statute. The Annual Statement of Compensation contained in the file (R. 1.16) demonstrates that MSRS reasonably interprets § 18531 as allowing it to request the necessary income information from which it is possible to determine whether a disability recipient is receiving compensation in excess of his or her earnings limitation. The alternative would be to allow recipients to be the sole judges of what constituted compensation to be reported to MSRS – an unworkable interpretation.

3

The other procedural arguments proffered by Courtois are equally unavailing. Specifically, the court does not read the retirement statutes as requiring a medical examination when a disability recipient receives compensation from gainful activity that exceeds the applicable limitations which reduces or eliminates the payment of disability benefits. See 5 M.R.S. §§ 18530(2)(A), 18530(2)(B) ("if the retirement benefit payments are eliminated by this subsection, the disability is deemed to no longer exist").

Similarly, the requirement that disability benefits may not be discontinued until all appeals have been exhausted applies to discontinuances for refusals to submit to medical examinations or discontinuations based on medical examinations under 5 M.R.S. § 18529, not to discontinuations of benefits under section 18530. See 5 M.R.S. § 18529(5).

Lastly, Courtois is correct that chapter 507(2)(B) of the Retirement Systems' rules, 94-411 C.M.R. ch. 507(2)(B), is not a model of clarity. However, that provision only makes sense if it is interpreted, as counsel for MSRS suggests, to mean that when a recipient of disability benefits receives remuneration consistent with the recipient's average final compensation, a rebuttable presumption is established that the applicable standard for determining that the recipient is not unable to engage in any substantial gainful activity has been met. See 94-411 C.M.R. ch. 507(1)(4) & (5).[3]


## 2. Rental Income Received by Courtois

As noted above, underlying Courtois's arguments is the premise that the net rental income he received did not constitute "compensation . . . from engaging in any

---

[3] Indeed, Courtois himself argues that if interpreted otherwise, ch. 507(2)(B) would be inconsistent with the governing statute and would be invalid. See Petitioner's Brief dated March 5, 2012 at 15-16.

gainful activity" within the meaning of 5 M.R.S. § 18530(2). Section 18530 does not contain a definition of compensation, but the agency reasonably interpreted compensation from engaging in gainful activity as remuneration for work performed as opposed to income from investments. See R. 25.6; 94-411 C.M.R. ch. 507(1)(A).

Based on the evidence in the record, the agency could have found that the rental income received by Courtois in 2009 more closely resembled investment income than compensation. If the court were evaluating the record in the first instance, it might have reached that conclusion. However, the court is not entitled to substitute its judgment for that of the agency, and there is evidence in the record to support a finding that Courtois performed a limited amount of work in connection with his three rental properties.[4] This work totaled approximately 30 hours during 2009, a year in which none of the existing tenants moved out.

There is no bright line separating investment income from compensation that can be applied to the circumstances of this case, and the court is therefore compelled to uphold the agency's finding that the rental income received by Courtois in 2009 constituted compensation from gainful activity.

3. Equitable Estoppel

Courtois's remaining argument is that MSRS should be equitably estopped from discontinuing his disability benefits. This is an argument that he was not obliged to

---

[4] See R. 8.9 – 8.63 (collecting and depositing rent checks, paying property taxes and insurance, paying utilities for two buildings, scheduling maintenance on the heating and septic systems, arranging for plowing of one parking area, providing sand, ice, and snow shovels to the tenants of two buildings, arranging for painting and minor repairs at two buildings, less than one hour of hallway and window cleaning at one building, one or two hours of gardening at one building).

5

preserve before the agency because the agency did not have jurisdiction to grant equitable relief. Berry v. Board of Trustees, 663 A.2d 14, 18-19 (Me. 1995).

Courtois is not confined to the administrative record in asserting his equitable estoppel claim. However, he has proceeded to brief that claim along with his appeal relying on certain materials provided by MSRS to disability recipients along with their Annual Statement of Compensation. See Petitioner's Brief dated March 5, 2012 at 16-19. Those materials are attached to the complaint in this action as Exhibit 2.[5]

The materials attached as Exhibit 2 are dated July 2010 – the year following the receipt of rental income that resulted in the discontinuance of Courtois's disability benefits. July 2010 was also three months after Courtois filed his Annual Statement of Compensation for 2009 (see R. 1.12). For purposes of this decision, however, the court will assume that Courtois had been sent identical materials in preceding years.

Those materials informed recipients that if they exceeded their earnings limitation, they would have to repay the amount equaling the difference between their earnings and their limitation amount. Complaint Ex. 2 page 3. Those materials did not inform recipients that if they exceeded their limitation by a sufficient amount, their benefits would be discontinued.

However, an essential element of an equitable estoppel claim is that the party claiming equitable estoppel must establish detrimental reliance on the allegedly misleading information or conduct. E.g., Berry v. Board of Trustees, 663 A.2d at 18 n.8. In this case Courtois has not offered any evidence that he changed his position or failed to take certain action in reliance on the absence of a warning in the MSRS materials that his benefits could be discontinued. This precludes his claim for equitable estoppel.

---

[5] Because Courtois has proceeded to brief the equitable estoppel issue based on Exhibit 2 to the complaint, the court understands that he is basing his equitable estoppel claim on Exhibit 2 and is not seeking to offer further evidence.

6

The entry shall be:

The decision of the Maine Public Employees Retirement System is affirmed. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June  27 , 2012

Thomas D. Warren
Justice, Superior Court

7

STATE OF MAINE　　　　　　　　　　　　　　SUPERIOR COURT
CUMBERLAND, ss.　　　　　　　　　　　　　　CIVIL ACTION
　　　　　　　　　　　　　　　　　　　　　　Docket No. AP-11-26

LELAND B. COURTOIS

　　　Etitioner,

v.　　　　　　　　　　　　　　　　　　　　ORDER

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM, et al,

　　　Respondents.


Before the court is a motion by respondents to dismiss the newly-added claim by plaintiff Leland Courtois that MainePERS's discontinuation of his disability benefits violated section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Also before the court is a motion by Courtois for the taking of additional evidence pursuant to Rule 80C(e).

This case arises from a ruling by MainePERS that Courtois, who has been receiving disability retirement benefits since 1998, exceeded the income limitations for disability retirement in 2009, resulting in the discontinuation of his disability retirement benefits. In Count I of his complaint Courtois seeks review of that decision pursuant to Rule 80C.

The court has previously granted respondents' motion to dismiss Courtois's section 1983 claim. See order dated November 22, 2011. While that motion was pending, Courtois amended his petition to add a claim that respondents' actions violated section 504 of the Rehabilitation Act.

Motion to Dismiss

For purposes of a motion to dismiss, the material allegations of the petition must be taken as admitted. The petition must be read in the light most favorable to the petitioner to determine if it sets forth elements of a cause of action or alleges facts that would entitle petitioner to relief pursuant to some legal theory. In re Wage Payment Litigation, 2000 ME 162 ¶ 3, 759 A.2d 217, 220.

On a motion to dismiss, however, the court is not obliged to accept conclusory allegations and legal conclusions that are bereft of any supporting factual allegations. In this case Courtois's amended petition merely recites the provisions of 29 U.S.C. § 794 and that states that by "their above-described actions, Respondents have unlawfully excluded Petitioner from participation in, denied Petitioner the benefits of, or subjected Petitioner to discrimination under a program or activity receiving federal financial assistance." Amended Petition ¶¶ 40-41.

Reviewing respondents' "above-described actions" as set forth in the petition, however, the court fails to discern any allegation that Courtois was an "otherwise qualified" individual who was denied benefits "solely by reason of his . . . disability" or that MainePERS receives federal financial assistance. See 29 U.S.C. § 794(a). These are the essential elements of a cause of action under section 504.

To the extent that Courtois is arguing merely that the decision to discontinue his disability benefits discriminated against him on the basis of his disability – and overlooking the absence of any allegation that MainePERS receives federal financial assistance – Courtois does not state a claim under section 504. This is true for several reasons. First, section 504's requirement that a person claiming the protection of that section be an "otherwise qualified" individual means that – without his disability – he would qualify for the benefit he is being denied. E.g., Grzan v. Charter Hospital, 104

2

F.3d 116, 120-21 (7th Cir. 1997). In this case Courtois would not have received any disability retirement benefits absent a disability.

Second, Courtois is not alleging that he was denied benefits "solely by reason of his disability." He is alleging that he was wrongfully denied benefits because MainePERS wrongfully calculated his outside income. See Amended Petition ¶¶ 17-18. Whether or not that MainePERS decision was correct, it was not based on Courtois's disability.

Finally, the court is aware of no authority that section 504 or any other statute prohibiting discrimination on the basis of disability forbids a state from determining that disability benefits may be limited if a recipient earns too much outside income.

Motion for Taking of Additional Evidence

To the extent that Courtois's motion for the taking of additional evidence is based on the section 1983 claims and Section 504 claims that have been dismissed, that motion must be denied.

There are two issues which may present a basis for the taking of additional evidence. First, in the proceedings before the agency, Courtois raised an equitable argument that MainePERS had violated certain trust obligations by failing to inform him that excess income could result in the discontinuation of benefits. MainePERS determined that that issue was outside the scope of the appeal. See R. 25.8. On this issue Courtois seeks to have the court consider a document distributed by MainePERS and attached as Exhibit 2 to his amended petition. Once the court has ruled on Courtois's Rule 80C appeal, it will determine whether it needs to consider Courtois's equitable argument and whether, in connection with that argument, it should consider Exhibit 2 and any other relevant evidence.

3

Second. Courtois argues that he was requested to submit a document during the administrative proceeding but that document (Exhibit 1 to the amended petition) is not included in the record. MainePERS denies that Courtois was ever asked to submit the document in question. If it is necessary to resolve the appeal, the court will consider whether additional evidence should be taken on the limited issue of whether Courtois was in fact requested to submit the document in question.

On all the other issues set forth in Courtois's motion for taking of additional evidence and the accompanying offer of proof, the court concludes that the remaining evidence that Courtois seeks to add is either (1) already contained in the administrative record, (2) not material, (3) could have been presented during the administrative proceeding,[1] or (4) constitutes an attempt to undertake an inquiry into the mental processes of an agency decision-maker without having made any prima facie showing of misconduct or bias. See Carl L. Cutler Co. v. State Purchasing Agent, 472 A.2d 913, 918 (Me. 1984).

The entry shall be:

Respondents' motion to dismiss plaintiff's claim under section 504 of the Rehabilitation Act is granted.

Plaintiff's motion for the ta king of additional evidence is denied except as to Exhibits 1 and 2 to the petition, as to which the court reserves decision until it has considered petitioner's appeal on the record.

Petitioner shall file his brief within 40 days of the date of this order. Respondents shall file their brief within 30 days after service of petitioner's brief. Petitioner shall have 14 days thereafter in which to file a reply brief.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January __17__, 2012

_____
Thomas D. Warren
Justice, Superior Court

---

[1] See 5 M.R.S. § 11006(1)(B) (requiring that a party proposing to offer additional evidence show that the evidence in question "could not have been presented . . . before the agency").

4

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-11-26
TPN - CUM - 11/22/2011

LELAND B. COURTOIS

Plaintiff

v.

ORDER

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM, et al,

Defendants.

STATE OF MAINE
Cumberland, ss, Clerk's Office

NOV 22 2011

RECEIVED

Before the court is a motion by defendants to dismiss Count II of the complaint, which asserts an independent claim for relief pursuant to 42 U.S.C. § 1983 alleging that the Maine Public Employees Retirement System (MainePERS) unconstitutionally discriminated against Leland Courtois on the basis of sexual orientation.

This dispute arises from a ruling by MainePERS that Courtois, who has been receiving disability retirement benefits since 1998, exceeded the income limitations for disability retirement in 2009, resulting in the discontinuation of his disability retirement benefit. In Count I of his complaint Courtois seeks review of that decision pursuant to Rule 80C.

Count II of the complaint alleges that in determining Courtois's income in 2009, MainePERS included $ 6,934 in imputed income constituting the cost of his domestic partner's health benefits. Complaint ¶¶ 15 n.3, 18, 23 n.4. Courtois, who is gay, alleges that he was subjected to unlawful discrimination based on sexual orientation because

MainePERS refused to deduct that $ 6,934 from his 2009 Annual Statement of Compensation. Complaint ¶ 30.[1]

Motion to Dismiss

For purposes of a motion to dismiss, the material allegations of the complaint must be taken as admitted. The complaint must be read in the light most favorable to the plaintiff to determine if it sets forth elements of a cause of action or alleges facts that would entitle plaintiff to relief pursuant to some legal theory. A claim shall only be dismissed when it appears beyond doubt that a plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim. In re Wage Payment Litigation, 2000 ME 162 ¶ 3, 759 A.2d 217, 220.

However, the court may look beyond the pleadings in certain limited circumstances. Moody v. State Liquor & Lottery Commission, 2004 ME 20 ¶¶ 9-11, 843 A.2d 43, 47-48. "Official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged." Id., 2004 ME 20 ¶ 11, 843 A.2d at 48.

The Alleged Equal Protection Violation

---

[1] On November 14, 2011 plaintiff filed a motion to amend the complaint to add a further independent claim – a claim that the MainePERS decision violated § 404 of the Rehabilitation Act. Defendants have until December 14, 2011 to respond to that motion.

As noted above, plaintiff's section 1983 claim is based on his contention that MainePERS denied him equal protection when it did not deduct $ 6,934 in imputed income based on domestic partner health insurance from his 2009 Annual Statement of Compensation. See Complaint ¶¶ 12, 18, 30, 37.[2] The 2009 Annual Statement of Compensation is contained in the administrative record. R. at 1.12 - 1.24. That statement, submitted to MainePERS by Courtois, includes his tax return, R. at 1.15 – 1.24, and a W-2 form showing that he received $23,061.29 in wages, tips, and other compensation from his employment at Maine Medical Center. R. at 1.14. Annexed as Exhibit 1 to the complaint is a document from an Employee Benefits Supervisor at Maine Medical Center stating that $ 6,394.31 of the $ 23,061.29 shown as compensation on Courtois's W-2 represented the value of domestic partner health coverage that under federal law was required to be reported as compensation to Courtois.

Courtois's 2009 Statement of Annual Compensation, including his tax return and W-2 and the explanatory statement from Maine Medical, is central to his claims and is referred to in the complaint. The court can therefore consider those documents in connection with defendants' motion to dismiss. Moody v. State Liquor & Lottery Commission, 2004 ME 20 ¶¶ 9-11, 843 A.2d at 47-48.

Accepting all those documents as part of the complaint, the question of whether Count II of the complaint states a cognizable § 1983 claim is an issue of law. This is because the applicable IRS statutes and regulations provide that compensation includes fringe benefits. Internal Revenue Code § 61(a)(1); Income Tax Regulations §§ 1.61-21(a)(3), 1.61-21(a)(4). Moreover, while employer-provided health coverage is generally

---

[2] Because Courtois is suing under 42 U.S.C. § 1983, he is necessarily relying on the equal protection clause of the U.S. Constitution. The same analysis would apply, however, to an equal protection claim under the Maine Constitution. Bangs v. Town of Wells, 2000 ME 186 ¶ 9 n.4, 760 A.2d 632, 635 n.4.

excluded from income, IRC § 106, the applicable regulations limit that exclusion to coverage for the employee, his or her spouse, and his or her dependents. Income Tax Regulations § 1.106-1. The exclusion therefore does not apply to a domestic partner who is not a spouse unless the domestic partner qualifies as a dependent under IRC § 152.

Under the regulations, the inclusion of domestic partner health coverage as imputed income is not based on sexual orientation but rather applies to all unmarried couples and domestic partners, whether or not they are of the same sex. As a matter of law, it did not violate the equal protection clause of the U.S. Constitution for MainePERS to follow the IRS distinction between married and unmarried couples in determining whether to impute the value of health coverage as part of compensation.

In this connection, the court is aware of no authority suggesting that marital status triggers strict scrutiny under the equal protection clause. See Smith v. Shalala, 5 F.3d 235, 239 (7th Cir. 1993) (in the absence of interference with a fundamental right, classification based on marital status analyzed under the rational basis test). Moreover, differentiating between married and unmarried couples for purposes of income taxation has been found to have a rational basis. See Kellems v. Commissioner, 58 T.C. 556 (1972), aff'd per curiam 474 F.2d 1399 (2d Cir. 1973). Indeed, if this were not true, unmarried couples who live together would be able to claim a right to file joint returns.

Plaintiff's opposition to the motion to dismiss appears to argue that MainePERS engaged in unconstitutional discrimination because it discontinued plaintiff's disability retirement benefits rather than merely seeking repayment of the amount by which plaintiff exceeded the applicable income limits. See Plaintiff's Opposition to Motion to Dismiss dated September 2, 2011 at 4. Plaintiff does not, however, allege that MainePERS has discontinued the disability retirement benefits of over-income individuals with same-sex domestic partners but has not discontinued such benefits for

4

similarly situated individuals in heterosexual relationships. Accordingly, the court agrees that plaintiff's section 1983 claim alleging unconstitutional discrimination based on sexual orientation fails to state a claim upon which relief may be granted.[3]

The above ruling applies only to plaintiff's claim of unconstitutional discrimination. It does not in any way foreclose Courtois's arguments that, as a matter of Maine law, MainePERS should not have included certain of the amounts shown on Courtois's tax return in determining whether he had exceeded the income limitations applicable to disability retirement. Nor does it foreclose Courtois's argument that the proper remedy for exceeding the income limits was a repayment order rather than a discontinuance of benefits. Those issues remain to be resolved in the context of Courtois's Rule 80C appeal.

The entry shall be:

Defendants' motion to dismiss Count II of the complaint is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: November __22__, 2011

Thomas D. Warren
Justice, Superior Court

---

[3] Courtois can perhaps argue that because same-sex marriages are not recognized under Maine law, he could not have married his domestic partner in order to exclude his domestic partner's health coverage from his income. If Courtois were to advance an equal protection claim on this ground, however, he would have to bring a lawsuit challenging Maine's marriage laws. Plaintiff has not mounted such a challenge in this case.

Moreover, even if Maine law were changed to allowed plaintiff to marry his domestic partner, the Internal Revenue Service appears to take the position that the federal Defense of Marriage Act precludes it from recognizing same sex marriages for purposes of the Internal Revenue Code. See, e.g., IRS Private Letter Ruling 200339001, 2003 PLR LEXIS 879 (June 13, 2003). This position is being challenged by individuals in California, a state which recognizes same–sex marriage. See Dragovich v. Department of the Treasury, 764 F.Supp.2d 1178 (N.D. Cal. 2011).

5

Date Filed 07-13-11      Cumberland      Docket No. AP-11-26
                                  County

Action    80C Appeal

LELAND B. COURTOIS

MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM
SANDRA J. MATHESON
THE BOARD OF TRUSTEES OF MAINE PUBLIC
      EMPLOYEES RETIREMENT SYSTEM

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JAMES A. CLIFFORD, ESQ.<br>ONE MONUMENT SQUARE, SUITE 421<br>PORTLAND, ME 04101 | CHRISTOPHER MANN, ESQ.<br>ASSISTANT ATTORNEY GENERAL<br>OFFICE OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA, ME 04333-0006 |

Date of
Entry