STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                        CIVIL ACTION
                                               DOCKET NO. AP-01-52;
                                               JRA - KEN-5/31/2002

TSULA BOTTING,

         Petitioner

         v.                                    **DECISION AND ORDER**

STATE OF MAINE, DEPARTMENT OF                  DONALD L. GAR....
BEHAVIORAL AND DEVELOPMENTAL SERVICES,         LAW LIBRARY

         Respondent                            JUN 18 2002


         This matter is before the court on petition for review of final agency action

pursuant to M.R. Civ. P. 80C and 5 M.R.S.A. § 11001.

I.       **Facts and Procedural History**

         In May, 1999, Petitioner Tsula Botting was voluntarily admitted to the psychiatric

unit of The Aroostook Medical Center (TAMC) following an incident in which she

ingested over twelve tablets of Trazodone, an anti-depressant medicine.[1]  While the

petitioner was a patient at TAMC, she was treated with a variety of anti-anxiety, anti-

depressant and psychotropic medications over a period of eight days.  She developed

nausea and vomiting in response to the treatments and reports of her behavior stated

that she appeared detached and over-sedated.  Her physician reduced the petitioner's

medications in response to their adverse impact and her physical symptoms improved.

On June 9, 1999, Botting was released from TAMC.

         In November, 2000, Botting filed a grievance with TAMC in which she

---

[1] The petitioner was first admitted to the medical unit of the Cary Medical Center in Caribou
on the basis of an attempted suicide.  Two days after she was admitted, she was transferred for
voluntary admission to the Aroostook Medical Center in Presque Isle.  It is the petitioner's course of
treatment at The Aroostook Medical Center that forms the basis of this appeal.

complained of the inadequacy of the care she received at TAMC and the hospital's failure to obtain proper informed consent before administering various medications to her. Her grievance was filed pursuant to Part A, Sect. VII (G)(9)(a) of the Rights of Recipients of Mental Health Services (RRMHS). 14-193 CMR, ch.1. The RRMHS is a set of rules promulgated pursuant to the Maine Administrative Procedures Act, 34-B M.R.S.A. § 3003 (1988 & Supp. 2001). They include a guide for grievance procedures for recipients of mental health services who believe that their basic rights have been violated The grievance process follows three sequential levels: Level I requires that a grievance be filed with the supervisor of the unit or program; Level II grievances are addressed by the administrator of the facility and; Level III grievances are appealed to the Commissioner of the Department of Behavioral and Developmental Services (DBDS). RRMHS, Sect. VII(G)(2).

In the petitioner's Level I grievance she complained of inadequate monitoring of the effects of her medications and failure to inform her about specific medications prescribed for her. Record, Tab 3b. The hospital responded by asserting that the petitioner's chart showed she was monitored by staff and, further, that the results of hospital patient surveys showed an overwhelming majority were adequately informed of their medical treatments, including the side effects of medication. Id.

On December 6, 2000, petitioner filed a Level II grievance with the chief administrator of TAMC. Id. The CEO responded by reiterating the hospital's conclusions in the Level I grievance response and denying the appeal. Id. On January 2, 2001, petitioner undertook her final administrative step and filed a Level III grievance

2

with the Commissioner of DBDS.[2]

Following a hearing on February 12, 2001, the DBDS Hearing Officer issued a draft decision in which he found that TAMC had failed to obtain informed consent from the petitioner prior to initiating treatment, but rejected the claim of inadequate medical care and her request for damages. Record, Tab 2. Along with the draft decision, the Hearing Officer issued a draft order requiring TAMC to develop new policies governing patient consent, including a provision allowing input from the petitioner in this process. Id.

The Hearing Officer's draft decision and order was then reviewed by the Commissioner of DBDS who in turn issued a final order. This order rejected several of the Hearing Officer's findings and dismissed the petitioner's grievance. Record, Tab 1. The Commissioner explained in the order that, although the hospital licensure rules of the Department of Human Services (DHS) require that private hospitals with psychiatric units comply with the terms of the RRMHS, DBDS has no independent authority over those facilities. The Commissioner then referred the grievance to the DHS licensing division for further investigation.

Petitioner has filed a timely appeal of the Commissioner's decision. She claims the decision reflects an erroneous interpretation of the law, constitutes an abuse of discretion and violates her right to due process. She is requesting reinstatement of the hearing officer's decision, including the portions unfavorable to her position.

II.    **Standard of review**

When an executive agency's decision is appealed pursuant to  M.R. Civ. P. 80C,

---

2  In January, 2001, the agency was  known as the Department of Mental Health, Mental Retardation, and Substance Abuse Services.

the court reviews the decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me.1995). When the Legislature enacts a statute and entrusts its administration to a particular agency, the court defers to the agency's interpretation and application of the statute. AFSCME Council 93 v. Maine Labor Rel. Bd., 678 A.2d 591, 593 (Me. 1996) (citing Imagineering , Inc. v. Superintendent of Insurance, 593 A.2d 1050, 1053 (Me. 1991).

## III. Discussion

At issue in this case is whether the Commissioner of DBDS has the authority to review a grievance and order a remedy pursuant to RRMHS for a patient who received psychiatric care at a private hospital. The petitioner argues that the Commissioner's decision to decline jurisdiction vitiates the grievance process and converts it instead into a review of hospital licensing only. She contends that this is neither a suitable remedy for an aggrieved patient, nor what the legislature intended, and that the Commissioner does have the authority to order the remedy recommended by the Hearing Officer, even in the case of private hospital such as TAMC.

Petitioner builds her argument on a series of statutes specific to the provision of mental health services. First she points to the enabling statute which mandates a rulemaking process to protect the rights of "clients receiving services from the department, from any hospital pursuant to subchapter IV or from any program or facility administered or licensed by the department under section 1203-A." 34-B M.R.S.A. § 3003(1). The RRMHS were drafted to comply with this statute. The statute also contains specific provisions requiring that regulations be promulgated to address grievance procedures and standards for informed consent. 34-B M.R.S.A. § 3003(2)(C),

4

(K). "Client" is defined separately in the statute to include anyone receiving services from an institution falling under the jurisdiction of the department. 34-B M.R.S.A. § 1001(2) (Supp. 2001). "Hospital" under subchapter IV includes non-state mental institutions, and is defined as a "public institution, a private institution or a mental health center, which is administered by an entity other than the State and which is equipped to provide inpatient care and treatment for the mentally ill." 34-B M.R.S.A. § 3801(6).

Petitioner asserts that TAMC is a private hospital with a psychiatric unit and as such is covered by subchapter IV. Additionally, the petitioner points to the Commissioner's powers under 34-B M.R.S.A. § 3802(1) to promulgate rules as necessary for the proper hospitalization of the mentally ill. Because the statute further authorizes the Commissioner to require reports from "any hospital," she argues that the legislature could only have intended that the Commissioner have supervisory authority over both public and private institutions. By braiding together these various strands of statutory provisions, the petitioner endeavors to persuade the court to conclude that the Commissioner has the authority to order the remedy recommended by the Hearing Officer because, she claims, TAMC is within the jurisdiction of DBDS pursuant to the statutes cited.

In its response, DBDS distinguishes between the so-called "substantive" rights described in the RRMHS and the "procedural" rights attached to the grievance process. DBDS contends that the substantive rights apply to patients in private hospitals, but their procedural rights are limited; the only mechanism to enforce such rights available to private patients is through the licensing function of DHS while the grievance process at DBDS is unavailable to those patients because enforcement by the Commissioner of

5

DBDS would constitute an action exceeding the scope of her authority. So, because the Commissioner has no contractual or licensing relationship with TAMC, a private hospital, she therefore has no authority to enforce any remedy. She maintains the only avenue available to her is a reference of the grievance to the DHS licensing unit.[3]

Although the Commissioner's interpretation of the statutes as limiting her jurisdiction may result in a different, and perhaps less direct, process afforded to the grievances of patients in private institutions compared to those in state hospitals, it is not within this court's power to unilaterally expand the scope of the Commissioner's authority. When a dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation will be upheld unless that statute plainly compels a contrary result. *Maine Banker's Ass'n v. Bureau of Banking*, 684 A.2d 1304 , 1306 (Me. 1996). Moreover, administrative agencies are creatures of statute, and can only have such powers as those expressly conferred upon them by the Legislature, or such as arise therefrom by necessary implication to allow carrying out the powers accorded to them. *Hopkinson v. Town of China*, 615 A.2d 1166, 1167 (Me.1992); *Valente v. Board of Environmental Protection*, 461 A.2d 716, 718 (Me.1983). Indeed, Maine law reflects a history of a respect for the "settled principles of the separation of powers." *New England Outdoor Center v. Comm'r, Inland Fisheries & Wildlife*, 2000 ME 66, ¶ 12, 748 A.2d 1009, 1014. While the petitioner's argument is persuasive, the remedies she seeks are beyond those authorized by this construction of the law which this court is compelled to follow.

---

3 The remedy available at the DHS licensing unit can be found at 22 M.R.S.A. § 1817. DBDS points out that the remedy sought by the petitioner under a DBDS grievance procedure and the one provided for under the licensing guidelines are essentially the same; both require the hospital to submit a plan of correction for agency review.

In the petitioner's second argument, she characterizes the Commissioner's position as one based on an assumption that DHS hospital licensing regulations preempt other hospital operation regulations. The petitioner argues that preemption should not apply here as there is no "frustration of purpose" of the licensing practices if DBDS allows the grievance procedure she endorses. *Sawyer Environmental Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 27, 760 A.2d 257, 263. DBDS counters by disclaiming any preemption argument on its part. Instead, it argues, and the court agrees, that statutes should not be read as conflicting where a harmonious interpretation is both possible and reasonable. *Daniels v. Tew Mac Aero Services, Inc.*, 675 A.2d 984, 987 (Me. 1996). *See also Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523, 524 (interpreting statute requires consideration of "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved").

The petitioner rebuts this argument by contending that the Commissioner's interpretation of the statutes is discordant rather than harmonious and that her dismissal of the grievance runs counter to the statement in the introduction to the RRMHS which provides that the rights apply to "all public or private inpatient psychiatric institutes and units." That being so, she says, it is intolerable and an inharmonious interpretation of the rules to treat private hospital patients differently from public hospital patients, especially when psychiatric patients are not always able to choose the hospitals to which they are admitted.

This argument notwithstanding, the court concludes that the Commissioner's efforts to harmonize the applicable statutes and rules is reasonable and must be deferred to. *Centamore v. Dep't of Human Services*, 664 A.2d at 370. Thus, the reference

7

to state authority over private entities, contained in the RRMHS, Part A, Section I, the Statement of Intent, which reads, in relevant part, "[p]rocedural mechanisms that exist to ensure enhancement of these rules include the licensing authority of the Department of Mental Health and Mental Retardation pursuant to 34-B M.R.S.A § 1203-A, the grievance and complaint procedures set forth in these rules, and the Department's contracting authority" is to be interpreted as the Commissioner has concluded. So, in the present case, as there is no contractual agreement between the DBDS and TAMC, the Commissioner's decision to refer to matter to the DHS licensing arm is also reasonable in light of the language here quoted. While the remedy sought by the petitioner, particularly her wish for personal consultation with TAMC and input into policy changes there, may not be available via the licensing review process, it bears noting that the petitioner never requested this form of relief from in her series of grievances.

Lastly, the petitioner invokes a due process argument. She contends the grievance process is a protectable interest which she claims under the RRMHS as a psychiatric patient. The Commissioner's dismissal of that claim, she argues, deprives her of that protected interest. DBDS responds by stating that due process is not implicated here by virtue of the fact that the Commissioner has no authority over patient grievances with a private hospital. While the treatment of the patient by the hospital could arguably involve a liberty interest, the Commissioner had no involvement in that process, and, as decided here, no authority to do so and therefore cannot be found to have violated the petitioner's 14th Amendment rights.

The Law Court has held that "[t]he essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard."

8

*Martin v. Maine Unemployment Insurance Commission*, 1998 ME 271, ¶ 15, 723 A.2d 412, 417. Three factors have been adopted as an analytical tool to determine the specific dictates of due process. *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the fiscal and administrative burdens that the additional procedural requirement would entail. Id. at 325. For purposes of the present analysis, assuming a protectable interest is at issue, the risk of erroneous deprivation through the present procedures is very minimal. Petitioner has been afforded a three levels of grievance procedures below, she now has this court's attention on appeal, and she will have the right to appeal this court's decision to our Law Court. Accordingly, the process provided for the airing of her grievance is constitutionally sufficient.

In the end, notwithstanding the petitioner's well-constructed argument, the court must conclude that deference to the agency's interpretation of the statutes in question here must be sustained. Accordingly, the decision of the Commissioner of DBDS dismissing the petitioner's Level II grievance is affirmed.

Therefore the entry will be:

Petition for review is DENIED; Decision of the Commissioner of the Department of Behavioral and Developmental Services is AFFIRMED.

Dated: May 31, 2002

John R. Atwood
Justice, Superior Court

9

Date Filed __7/19/01__ ___Kennebec___ Docket No. __AP01-52__

County

Action __Petition for Review__

80C

# J. ATWOOD

Tsual Botting | VS. Dept. of Mental Health, Mental Retardation
Plaintiff's Attorney | Defendant's Attorney & Substance Abuse Services

Helen Bailey, Esq.
Disability Rights Center
23 Stone Street
P.O. Box 2007
Augusta, Maine 04338-2007

Steven Rowe, AAG   Katherine Greason, AAG
6 State House Station
Augusta, Maine 04333
-David Peterson, Esq. (Int.P-Aroostook Med.Ct
140 Academy Street
P.O. Box 151
Presque Isle, Maine  04769-0151
-Elizabeth Olivier, Esq. (TAMC)
One City Center
P.O. Box 9546  Portland, Maine 04112

| Date of Entry | |
|---|---|
| 7/24/01 | Petition for Review of Final Agency Action M.R.Civ.P. 80C, 5 MRSA 11001, filed. s/Bailey, Esq. (filed 7/19/01) Certificate of Service, filed. s/Bailey, Esq. Motion to Modify the Contents of the Record or to Impound Portions of the Record, filed. s/Bailey, Esq.  (attachment 1,2) Proposed Order, filed. Proposed Order, filed. |
| 8/2/01 | Entry of Appearance on Behalf of the Aroostook Medical Center, filed. s/Olivier, Esq. |
| 8/17/01 | Entry of Appearance, filed. s/Greason, AAG Certified Administrative Record, filed. |
| 8/20/01 | Notice of briefing schedule mailed to attys of record. |
| 9/26/01 | Petitioner's Brief, filed. s/Bailey, Esq. (Certified copies of DHS licensing regulations and DMHMRSAS regulations) |
| 10/19/01 | Respondent's Brief, filed. s/Greason, AAG Certifcate of Service, filed. s/Greason, AAG |
| 10/29/01 | Petitioner's Reply Brief, filed. s/Bailey, Esq. |
| 12/28/01 | Letter from attorney Olivier indicating she will not be appearing on 12/28 for the hearing, filed on 12/27/01. |
| ------- | Hearing had with Hon. Justice John Atwood, presiding. Helen Bailey, Esq. for the Plaintiff and Katherine Greason, AAG for the Defendant. Oral arguments made to the court. Court to take matter under advisement. |
| 5/31/02 | DECISION AND ORDER, Atwood, J.      Petition for review is DENIED; Decision of the Commissioner of the Department of Behavorial and Developmental Services is AFFIRMED. Copies mailed to attys of record. |
| | Copies mailed to Deborah Firestone, Garbrecht Library and Goss. Notice of removal of record mailed to attys of record. |